**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:21-cr-00708-RCL-1** |
| | : | |
| **LEO CHRISTOPHER KELLY,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION IN LIMINE**
**TO EXCLUDE IMPROPER CHARACTER EVIDENCE**

On January 6, 2021, Defendant Leo Christopher Kelly ("Kelly") participated in the riot at the U.S. Capitol. At trial in this case, this Court should preclude Kelly from offering evidence of specific instances of his prior good conduct because such evidence is improper character evidence under Federal Rules of Evidence 404(a)(1) and 405(a).

**BACKGROUND**

**A.    Relevant Procedural History**

On January 16, 2021, the court issued a criminal complaint that charge Kelly with violating 18 U.S.C. §§ 1752(a)(1) and (2) (knowingly entering or remaining in any restricted building or grounds without lawful authority) and 40 U.S.C. §§ 5104(e1)(2)(A),(C), and (G) (violent entry with intent to disrupt the orderly conduct of official business and disorderly conduct on capitol grounds). ECF 1.

After a series of unopposed motions to continue, on December 3, 2021, the Grand Jury issued a seven-count indictment that charged Kelly with 18 U.S.C. § 1512(c)(2) (Obstruction of an Official Proceeding) (Count One), violating 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds) (Count Two), 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds) (Count Three), 40 U.S.C. §

5104(e)(2)(A)(Entering and Remaining on the Floor of Congress)(Count Four), 40 U.S.C. §

5104(e)(2)(C)(Entering and Remaining in Certain Rooms in the Capitol Building)(Count Five), 40

§ U.S.C. 5104(e)(2)(D)(Disorderly Conduct in a Capitol Building) (Count Six), and 40 U.S.C. §

5104(e)(2)(G)(Parading, Demonstrating, or Picketing in a Capitol Building) (Count Seven). ECF

27.

### B.  Factual Background

At 1:00 p.m., EST, on January 6, 2021, a Joint Session of the United States Congress

convened in the United States Capitol building. The Joint Session assembled to debate and certify

the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session

underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S.

Capitol. As early as 12:50 p.m., certain individuals in the crowd forced their way through, up, and

over erected barricades. The crowd, having breached police officer lines, advanced to the exterior

façade of the building. Members of the U.S. Capitol Police attempted to maintain order and keep

the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd

forced entry into the U.S. Capitol. At approximately 2:20 p.m., members of the United States

House of Representatives and United States Senate, including the President of the Senate, Vice

President Mike Pence, were instructed to – and did – evacuate the chambers.

### I.  Kelly's Participation in the January 6, 2021 Riot.

Kelly is a resident of Cedar Rapids, Iowa. ECF 1-1 at 2. Kelly was present in Washington,

DC for the "Stop the Steal" rally on January 6, 2021. At the conclusion of the rally, Kelly marched

to the U.S. Capitol. Kelly saw individuals climbing the scaffolding in place for the construction of

the inauguration and began to climb the scaffolding. United States Capitol Police ("USCP")

closed-circuit video footage establishes that at 2:40 p.m., rioters shattered a glass Senate fire Door

windowpane and opened the Senate Fire Door. The rioters overwhelmed the responding USCP officers. Some rioters forced their way into nearby Senate offices.

At approximately 2:43 p.m., Kelly and other rioters streamed into the breached Capitol. Kelly recorded their confrontation with USCP officers.  Kelly also entered a breached Senate office and recorded an encounter with an individual in which Kelly stated, "[h]ey knock that shit off. Don't destroy this place. This is ours. Dude, knock it off."  At approximately 2:58 p.m., Kelly and others confronted USCP officers near the North Door Appointment Desk. The officers tried to prevent the rioters from advancing further into the Capitol, but the rioters overwhelmed them. Kelly made his way to the Senate Chamber. *See* Figure 1.



Figure 1 – Screen capture from A Reporter's Footage Inside the Capitol Siege. Kelly is pictured on the Senate dais wearing a black jacket and grey fleece sweater.

Kelly stood on the Senate dais and used his cellular phone to record himself examining papers on the desk. He also took photographs of Senate material. At approximately 3:05 p.m., law

enforcement officers expelled Kelly and the other rioters from the Senate Chamber. At approximately 3:08 p.m., Kelly exited the Capitol.

Kelly returned to his hotel. At approximately 6:00 p.m., while wearing the same fleece jacket worn during the Capitol breach, Kelly was interviewed by LifeSiteNews.com.[1] *See* Figure 2. During the interview Kelly admitted he marched to the Capitol where he saw and then joined others climbing the scaffolding to get into the Capitol. Kelly further stated that he did so because he believed there were "crimes against the Constitution by elected politicians" and he blamed courts for not looking at the evidence when the courts dismissed election fraud claims. Local Iowa media also featured Kelly's account of his time inside the Capitol.



Figure 2

---

[1] LifeSiteNews.com "is a non-profit Internet news service dedicated to issues of life, family, and many related issues." *See* https://www.lifesitenews.com/about. Last accessed November 15, 2022.

The FBI received numerous anonymous tips identifying Kelly as an individual inside the Capitol unlawfully on January 6, 2021. On February 9, 2021, law enforcement officers arrested Kelly. Kelly waived his right to remain silent and made incriminating statements.

## II.    The Limited Admissibility of Character Evidence.

To prove obstruction of an official proceeding, the felony count, the Government must show that the Kelly acted corruptly, that is he acted with an improper motive or purpose. *See, e.g., United States v. Ganim*, 510 F.3d 134, 151 (2d Cir. 2007). The other counts, all misdemeanors, require the Government to prove that Kelly engaged in certain behavior while in the Capitol building or on its grounds without legal authority.

Rule 404(a) of the Federal Rules of Evidence explicitly prohibits either party from offering evidence of character to prove that a person acted in conformity therewith on any particular occasion. The rule applies to prior good acts as well as prior bad acts of the defendant. As the Sixth Circuit has explained, "For the same reason that prior 'bad acts' may not be used to show a predisposition to commit crimes, prior 'good acts' generally may not be used to show a predisposition not to commit crimes." *United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014). In other words, "evidence of good conduct is not admissible to negate criminal intent." *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008)(internal citation omitted).

The Rule contains three exceptions, one of which governs the admissibility of evidence of a defendant's character. Fed. R. Evid. 404(a)(1). Such evidence is admissible only if it relates to a "pertinent" or relevant character trait. *Id.* Consistent with Rule 405, "when evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). "When a person's character or character trait is an essential element of a charge, claim, or defense, the character or

trait may also be proved by relevant specific instances of the person's conduct." Fed. R. Evid. 405(b).

This Court has authority to grant a motion in limine, in advance of trial, which excludes inadmissible evidence, as well as any and all reference by the parties, attorneys and witnesses to the inadmissible evidence. *Luce v. United States*, 469 U.S. 38 (1984).

### III.    The Court Should Issue an Order In Limine Precluding the Introduction of Character Evidence Derived From any Specific Acts.

The Court should exclude character evidence if offered by Kelly to prove his general good character. Such evidence is not admissible because it is not pertinent to or an essential element of the obstruction or trespassing charges pending against Kelly. Courts have held that the general character trait of law-abidingness is pertinent to almost all criminal offenses. *In re Sealed Case*, 352 F.3d 409, 412 (D.C. Cir. 2003). However, even if Kelly offers evidence of prior good acts indicative of a general law-abidingness, the form of that evidence would be governed by Federal Rule of Evidence 405(a), which limits such evidence to "testimony as to reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). Proof of specific instances of conduct is not permitted under the Rule, unless the trait or character of a person is an essential element of the charge, claim or defense—which, in this case, it is not. *See United States v. Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997). As detailed above, the Government must prove that Kelly acted corruptly, and engaged in specific conduct while being present without legal authority at the Capitol or on its grounds. None of the elements of the offenses with which Kelly had been charged relate to anything in his background. Thus, any evidence Kelly may offer of his specific good acts is inadmissible.

Accordingly, this Court should preclude Kelly from offering character evidence in the form of specific acts, or general reputation or opinion evidence beyond the scope of general law-abidingness.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By: */s/ Michael G. James*
MICHAEL G. JAMES
Assistant United States Attorney
N.Y. Registration Number 2481414
Office of the United States Attorney
Eastern District of North Carolina
(on detail to the USAO-DC)
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Mike.James@usdoj.gov
Telephone: (919) 856-4530