UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 1:21-cr-00708-RCL-1 |
| | : | |
| **LEO CHRISTOPHER KELLY,** | : | |
| | : | |
| Defendant. | : | |

**MOTION IN LIMINE REGARDING**
**AUTHENTICATION OF PUBLICLY AVAILABLE VIDEO EVIDENCE**

The United States of America, by and through the United States Attorney for the District of Columbia, hereby submits the following motion in limine regarding the authentication of publicly available video evidence at trial.

### BACKGROUND

#### A.  Relevant Procedural History

On January 16, 2021, the court issued a criminal complaint that charged Defendant Leo Christopher Kelly ("Kelly") with violating 18 U.S.C. §§ 1752(a)(1) and (2) (knowingly entering or remaining in any restricted building or grounds without lawful authority) and 40 U.S.C. §§ 5104(e1)(2)(A),(C), and (G) (violent entry with intent to disrupt the orderly conduct of official business and disorderly conduct on capitol grounds). ECF 1.

After a series of unopposed motions to continue, on December 3, 2021, the Grand Jury issued a seven-count indictment that charged Kelly with 18 U.S.C. § 1512(c)(2) (Obstruction of an Official Proceeding) (Count One), violating 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds) (Count Two), 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds) (Count Three), 40 U.S.C. § 5104(e)(2)(A)(Entering and Remaining on the Floor of Congress)(Count Four), 40 U.S.C. §

1

5104(e)(2)(C)(Entering and Remaining in Certain Rooms in the Capitol Building)(Count Five), 40 U.S.C. § 5104(e)(2)(D)(Disorderly Conduct in a Capitol Building) (Count Six), and 40 U.S.C. § 5104(e)(2)(G)(Parading, Demonstrating, or Picketing in a Capitol Building) (Count Seven). ECF 27.

### B. Factual Background

At 1:00 p.m., EST, on January 6, 2021, a Joint Session of the United States Congress convened in the United States Capitol building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. As early as 12:50 p.m., certain individuals in the crowd forced their way through, up, and over erected barricades. The crowd, having breached police officer lines, advanced to the exterior façade of the building. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol. At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

### *Kelly's Participation in the January 6, 2021 Riot.*

Kelly is a resident of Cedar Rapids, Iowa. ECF 1-1 at 2. Kelly was present in Washington, DC for the "Stop the Steal" rally on January 6, 2021. At the conclusion of the rally, Kelly marched to the U.S. Capitol. Kelly saw individuals climbing the scaffolding in place for the construction of the inauguration and began to climb the scaffolding. United States Capitol Police ("USCP") closed-circuit video footage establishes that at 2:40 p.m., rioters shattered a glass Senate fire Door

windowpane and opened the Senate Fire Door. The rioters overwhelmed the responding USCP officers. Some rioters forced their way into nearby Senate offices.

At approximately 2:43 p.m., Kelly and other rioters streamed into the breached Capitol. Kelly recorded their confrontation with USCP officers. Kelly also entered a breached Senate office and recorded an encounter with an individual in which Kelly stated, "[h]ey knock that shit off. Don't destroy this place. This is ours. Dude, knock it off." At approximately 2:58 p.m., Kelly and others confronted USCP officers near the North Door Appointment Desk. *See* Figure 1.



Figure 1 – screen capture from a Twitter account of Kelly near the North Door Appointment Desk.

The officers tried to prevent the rioters from advancing further into the Capitol, but the rioters overwhelmed them. Kelly made his way to the Senate chamber. *See* Figures 2 and 3.



Figure 2 - Kelly and others about to enter the Senate chamber.



Figure 3 – Screen capture from A Reporter's Footage Inside the Capitol Siege. Kelly is pictured on the Senate dais wearing a black jacket and grey fleece sweater.

Kelly stood on the Senate dais and used his cellular phone to record himself examining papers on the desk. He also took photographs of Senate material. At approximately 3:05 p.m., law

4

enforcement officers expelled Kelly and the other rioters from the Senate chamber. At approximately 3:08 p.m., Kelly exited the Capitol and returned to his hotel.

At approximately 6:00 p.m., while wearing the same fleece jacket worn during the Capitol breach, Kelly was interviewed by LifeSiteNews.com.[1] *See* Figure 4. During the interview Kelly admitted he marched to the Capitol where he saw and then joined others climbing scaffolding to get into the Capitol. Kelly further stated that he did so because he believed there were "crimes against the Constitution by elected politicians" and he blamed courts for not looking at the evidence when the courts dismissed election fraud claims. Local Iowa media also featured Kelly's account of his time inside the Capitol.



Figure 4 – screen capture fromLifeSiteNews.com. interview.

---

[1] LifeSiteNews.com "is a non-profit Internet news service dedicated to issues of life, family, and many related issues." *See* https://www.lifesitenews.com/about. Last accessed November 15, 2022.

The FBI received numerous anonymous tips identifying Kelly as an individual inside the Capitol unlawfully on January 6, 2021. On February 9, 2021, law enforcement officers arrested Kelly. Kelly waived his right to remain silent and made incriminating statements.

## ANALYSIS

The riot at, and attack on, the United States Capitol Building was an event of unparalleled size and scope. Much of the event was recorded on video, including surveillance footage captured by the USCP cameras and by cameras and cellphones carried by journalists and by rioters. The government's case at trial will rely in part on USCP camera footage to prove Kelly's specific conduct and the greater context in which it took place. Should Kelly not stipulate to the authenticity of this footage, the government will call an appropriate witness at trial. But the government may also introduce footage from videos taken by other rioters or by journalists; for this set of video evidence, the government seeks a pretrial ruling on authenticity.

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies this requirement. As relevant here, those examples include:

> (3) *Comparison by an Expert Witness or the Trier of Fact.* A comparison with an authenticated specimen by an expert witness or the trier of fact.
>
> (4) *Distinctive Characteristics and the Like.* The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

Fed. R. Evid. 901(b)(3), (4).

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992); *see also United States v. Vidacak*, 553

F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]" (citation and quotation marks omitted)). Rule 901 "requires only a prima facie showing of genuineness and leaves it to the [finder of fact] to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases); s*ee also, e.g., United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely . . . the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a prima facie showing is required"). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the [finder of fact]." *Vidacek*, 553 F.3d at 349; *see also, e.g., Belfast*, 611 F.3d at 819 ("Once that prima facie case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a prima facie showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). S*ee, e.g., United States v. Broomfield*, 591 F. App'x 847, 851 (11th Cir. 2014) (unpublished) ("Authentication may be established 'solely through the use of circumstantial evidence.'" (quoting U*nited States v.*

*Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)); *see, e.g., United States v. Bowens,* 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that "[a]nyone could have used the defendants' Facebook accounts, just as the pictures could have depicted the men smoking tobacco cigars, and 'getting high' could have been a reference to skydiving," but that there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts about using marijuana"); *Broomfield*, 591 F. App'x at 852 (finding sufficient evidence of authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").

In deciding preliminary questions about the admissibility of these videos, "[t]he court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). In other words, the government may rely upon otherwise inadmissible evidence in establishing the authenticity of the video evidence described in this motion. *See, e.g., United States v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997). Of course, even with a pretrial ruling that evidence is authentic, and thus admissible, the government must introduce sufficient evidence at trial from which a reasonable fact-finder could reach the same conclusion regarding authenticity. *See, e.g., United States v. Gammal*, 831 F. App'x 539, 542 n.6 (2d Cir. 2020) (unpublished) ("Insofar as the District Court relied on non-public information to make its preliminary determination, it did not err because it did not do so in

8

lieu of the presentation of sufficient authenticating public evidence later at trial."); *United States v. Puttick*, 288 Fed. App'x 242, 246 (6th Cir. 2008) (unpublished) ("It is permissible for the judge to make a preliminary determination as to authentication, admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated."); *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992) ("Thus, even though the district court may have ruled during an in camera proceeding that the proponent had presented sufficient evidence to support a finding that a tape recording was authentic, evidence that would support this same ruling must be presented again, to the jury, before the tape recording may be admitted.").

At trial, the government intends to offer in evidence video clips from the USCP cameras and House and Senate recording systems, as well as from other sources, including footage captured by other individuals present in the vicinity of and inside the Capitol building on January 6, 2021. Many of the videos were obtained through open-source means and are publicly available. For any such videos, the government will establish authenticity by asking the jury to compare it with other, authenticated exhibits, in particular, to USCP camera footage. Fed. R. Evid. 901(3). This footage will confirm that such videos are what they purport to be: recordings of the same events, captured from a slightly different perspective, and in some cases depicting events and sounds that were not captured by the USCP camera or the Senate recording system. In addition, the distinctive features of the interior and exterior of the Capitol building and grounds and of the other individuals depicted in the footage will help authenticate the videos. *Id.* at 901(4).

For example, Figure 1 is a screen capture from a video on Twitter of Kelly and other rioters chanting "Whose House? Our House." The area inside the Capitol where Kelly and the others confronted USCP officers contains unique floor and painted wall patterns. Figure 2 is a screen

capture of CCTV footage of Kelly near the Senate chamber with a rioter wearing a yellow and black checkered jacket. Figure 3 is a screen capture taken from The New Yorker writer Luke Mogelson's video of Kelly near the same yellow and black checkered jacket attired rioter and Figure 4 is a screen capture from Kelly's interview with a reporter from LifeSiteNews.com. In Figures 2, 3, and 4 Kelly is wearing the same clothing he wore when he unlawfully entered the Capitol. The distinctive appearance of Kelly and of some rioters, and the unique features of the Capitol interior as captured in the USCP CCTV footage acts as connective elements present in the publicly available video and demonstrates its authenticity. The government intends to introduce other publicly available footage of the Capitol interior and exterior at trial in the same manner.

## CONCLUSION

For the reasons stated herein, the government respectfully requests that this Court rule in limine that the government's video evidence from non-UCSP sources satisfies the authenticity requirement of Fed. R. Evid. 901.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ *Michael G. James*
MICHAEL G. JAMES
Assistant United States Attorney
N.Y. Reg. No. 2481414
Office of the United States Attorney
Eastern District of North Carolina
(on detail to the USAO-DC)
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Mike.James@usdoj.gov
Telephone: (919) 856-4530