UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-cr-00708-RCL-1 |
| | : | |
| LEO CHRISTOPHER KELLY, | : | |
| | : | |
| Defendant. | : | |

**RESPONSE TO DEFENDANT'S MOTION IN LIMINE, ECF NO. 49, TO PREVENT THE USE OF TERMS**

The government files this response in opposition to Defendant Leo Christopher Kelly's ("Kelly") Motion in Limine, ECF No. 49. Kelly moves the Court to preclude the government from using certain terms at trial, on the ground that such terms will be hearsay or improper opinion testimony. Kelly then moves to preclude a variety of categories of evidence that Kelly asserts are substantially more prejudicial than probative, and so inadmissible under Federal Rule of Evidence 403. Kelly is wrong as to both contentions, for the reasons outlined below.

**ARGUMENT**

**The Government and Its Witnesses May Use Terms that Appropriately
And Accurately Describe the Events of January 6, 2021.**

Kelly moves in limine to prevent the government from using the following terms: "rioters," "breach," "confrontation," "police line," "anti-government extremism," "insurrectionists," and "mob," (the "subject terms") a list that includes several terms that many an objective observer would agree fairly describes the events of January 6. *See, e.g. United States v. Munchel,* 991 F.3d 1273, 1276, 1279, 1284 (D.C. Cir. 2021) (using "mob," "riot," "insurrection," and "breach"). ECF 49 at 2. Other judges in this district have denied motions to preclude the use of similar terms in January 6 cases. *See United States v. Rahm, 21-cr-150* (TFH), ECF No. 47

1

(D.D.C. Aug. 16, 2022)*; United States v. Alford,* 21-cr-263 (TSC), ECF No. 83 (D.D.C. Sept. 9, 2022); *United States v. Nassif,* 21-cr-421 (JDB).[1] This Court should do the same.

In support of his motion, Kelly makes two arguments: (1) the subject terms raise hearsay and Confrontation Clause issues when included in the captions of videos or photographs, and (2) witnesses using the subject terms would be providing improper opinion testimony. ECF No. 49 at 2. Neither argument supports his requested relief. The government addresses arguments in reverse order.

First, the use of the subject terms is not impermissible opinion testimony. Under Federal Rule of Evidence 701, courts have wide latitude to permit testimony in the form of an opinion so long as it is "(a) rationally based on a witness's perception, (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Courts thus liberally permit lay witnesses to testify to everyday inferences from their observations, so long as they do not stray into expert testimony. "The prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences." *United States v. Fulton*, 837 F.3d 281, 301 (3d Cir. 2016) (citation omitted). For example, "testimony that a person was 'excited' or 'angry' is more evocative and understandable than a long physical description of the person's outward manifestations." A*splundh Mfg. Div., a Div. of*

---

[1] Judge Bates denied a similar motion at a pretrial conference in *United States v. Nassif,* No. 1:21-cr-00421-JDB, on November 7, 2022.

*Asplundh Tree Expert Co. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196 (3d Cir. 1995) (quoting Stephen A. Saltzburg et al., Federal Rules of Evidence Manual 1032 (6th ed. 1994)).

As a threshold matter, several of the subject terms are likely not even "opinion testimony." Here, an officer's testimony that police formed a "police line," or that a rioter "breached" a barrier, is not opinion testimony. Both are a literal description of the witness's actual observations, not a characterization or inference. *See, e.g., United States v. Robinson*, No. CR 16-98 (CKK), 2017 WL 11496730, at *1 (D.D.C. June 30, 2017) (observing that "it is not clear that" testimony that patients were "nodding off" "presents an opinion at all"). Indeed, it is not clear how else Kelly would like witnesses to describe either concept without using synonyms of the terms.

But even if those terms were "opinions," they and three of the other four mentioned by Kelly ("mob," "rioters," and "confrontation") would qualify as permissible Rule 701 lay-opinion testimony.[2] Much like a lay witness can call a witness "angry" or "excited," a Capitol Police officer can describe what he perceives to be a "confrontation" without laboriously explaining each physical observation that led to that inference. Officers who battled the crowd for hours and watched it repeatedly disregard direct commands from law enforcement, assault officers, and destroy property could rationally perceive the events of January 6 as a "riot," and could fairly view the thousands of unauthorized individuals who descended upon the Capitol to be a "mob."[3]

The subject terms will also be relevant to understanding both the witnesses' experiences relating to January 6 and various facts that may be at issue, as permitted by Rule 701(b). For example, the government must prove that Kelly obstructed an official proceeding, and although

---

[2] The government does not anticipate referring to the events of January 6 as an "insurrection," labeling Kelly an "insurrectionist," or asking witnesses whether they viewed him as such.
[3] Similarly, witnesses who were present on January 6 could point out such features in a video, informed by their experience on January 6.

not charged in the Indictment, the government may also proceed under an aiding and abetting theory related to that count. It is thus relevant whether the group of people who invaded Capitol grounds acted, according to the percipient witnesses, like a "mob" engaged in a "riot," or instead as a group of peaceful protestors.

Finally, the subject terms do not reflect expert knowledge, satisfying Rule 701(c). If a witness can testify that a defendant appeared drunk, *Robinson*, 2017 WL 11496730, at *1 (D.D.C. June 30, 2017), or depressed, *Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 566 (7th Cir. 2006), a witness can testify that a group of individuals appeared to be a "mob" or engaged in a "confrontation." *See also Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240–241 (6th Cir. 2010) (including "the appearance of persons or things, identity, the manner of conduct," as among "prototypical examples" of lay opinion) (citation omitted).

Kelly's concerns find no support in the cases he cites. First, use of the subject terms would not constitute an opinion that the jury is in an equal position to render. ECF No. 49 at 2. Courts have disapproved of opinion testimony where the witness has no greater familiarity with a subject than the jury, such as a courtroom identification based on a photograph. *See United States v. Garcia-Ortiz,* 528 F.3d 74, 79-80 (1st Cir. 2008). But the government's witnesses will base their testimony on their firsthand experience on January 6 with the crowd's conduct and law enforcement's response, which cannot be gleaned from a video or photograph in a courtroom. Second, witnesses' use of the subject terms will also not usurp the role of the jury. There is little risk of a witness opining on "the application of the exact statutory elements involved in the case," *United States v. Locke*, 643 F.3d 235, 241 (7th Cir. 2011); *see also United States v. Wantuch,* 525

4

F.3d 505, 514 (7th Cir. 2008) (witness asked to offer legal conclusions and to speculate as to defendant's frame of mind). The subject terms here will not be offered as legal conclusions parroting statutory elements; Kelly is not charged with rioting or insurrection, and the legal question is not whether he "breached" a "police line" or had a "confrontation."

Instead of usurping any jury function, the subject terms allow the government to present its case clearly and concisely. "Allowing witnesses to state their opinions instead of describing all of their observations has the further benefit of leaving witnesses free to speak in ordinary language." *Gov't of Virgin Islands v. Knight*, 989 F.2d 619, 630 (3d Cir. 1993). "If circumstances can be presented with greater clarity by stating an opinion, then that opinion is helpful to the trier of fact." *Id.* Lay opinion terms are often easier for the jury to understand than a compilation of every single fact that is a building block of that lay opinion, to say nothing of the waste of time if the witness is forced to do so repeatedly, rather than being allowed to use a shorthand term. *See, e.g., Knight*, 989 F.2d 619 at 630 (permitting opinion that gunshot was "accidental"); *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1179 (10th Cir. 2001). Were the court to preclude the use of "mob," for example, an officer may have to testify that "thousands of agitated people stood at short distances from one another in a relatively small area in the same location, and many members of them appeared to share a common purpose." Instead of "police line," an officer might have to testify that "police officers stood in a straight, horizontal formation in front of the crowd." Such oblique descriptions would only serve to confuse the jury, waste time, and sanitize the government's case.

But the rules of evidence do not "generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (rejecting a Rule 403 challenge). Witnesses need to be able to

5

use appropriate language to explain the nature and gravity of the defendant's conduct. And events that took place at the Capitol on January 6, 2021, are accurately described by the terms "riot," "mob," "confrontation," and "breach," as the D.C. Circuit's use of several of those terms reflects. Many hundreds of people forced their way past lines of law enforcement officers building during the constitutionally mandated process of certifying the Electoral College votes, injured more than one hundred law enforcement officers, and caused more than two million dollars in damage and loss. It was a dramatic, violent, intense day. The government is entitled to present a fair depiction of the day's events to the jury.

Kelly next objects to using the subject terms in the captions of videos or photographs, on hearsay or confrontation grounds. ECF No. 49 at 2. He does not specify particular captions to which he objects. The government assumes he refers to titles of videos or photographs affixed by third parties around the time of January 6, 2021 (for example, a hypothetical video entitled "Rioters Storm the Capitol"). Such captions are obviously not testimonial, so Kelly's Confrontation Clause objection is misplaced. *See Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). Nor is a caption on a video or photograph necessarily impermissible hearsay; it may be non-hearsay (for example, if it was created by Kelly), or it may not be offered for its truth. Prior to trial, however, the government will review its exhibits, and will redact any captions raising hearsay or Rule 403 concerns.

Lastly, Kelly seeks to preclude reference to Kelly as "an anti-government extremist" and asserts in support of his argument that the government "may attempt to introduce evidence, make prejudicial statements, or ask prejudicial questions about the character of the Defendant when character is not in issue and has no relevance to the crimes charged." ECF No. 49 at 2. The government does not intend to refer to Kelly as an anti-government extremist and does not seek to

prove anything about Kelly's character—that is, that he is a bad person, untrustworthy, violent, or any similar character traits.[4]

In summary, the subject terms fit comfortably within Rule 701, and precluding their use would hamstring the government's ability to present a concise, accurate narrative of Kelly's conduct, properly situated in the context of the events of January 6. The government does agree, however, not to refer to Kelly as an "insurrectionist" or "anti-government extremist" (unless he somehow opens the door, or unless the terms appears in documentary evidence admissible for purposes other than to demonstrate Kelly acted in accordance with a character trait) and will redact the subject terms from captions from videos or photographs if those terms would constitute inadmissible hearsay.

## CONCLUSION

For the above-stated reasons, the Court should deny Kelly's motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Michael G. James*
MICHAEL G. JAMES
Assistant United States Attorney
N.Y. Reg. No. 2481414
Office of the United States Attorney
Eastern District of North Carolina
(on detail to the USAO-DC)
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Mike.James@usdoj.gov

---

[4] One exception is Kelly's character for truthfulness. If Kelly testifies, then on cross examination the government may inquire into specific instances of conduct to attack his character for truthfulness. Fed. R. Evid. 608(b). And separate and apart from character evidence, the government may of course impeach Kelly's statements with prior inconsistent statements or extrinsic evidence that contradicts Kelly's statements. *See* Fed. R. Evid. 607, 806.

Telephone: (919) 856-4530

## CERTIFICATE OF SERVICE

This is to certify that on November 29, 2022, I, the undersigned Assistant United States Attorney, served on copy of the foregoing response to the defendant's motion via CM/ECF on the counsels of record in this action.

By: /s/ *Michael G. James*
MICHAEL G. JAMES
Assistant United States Attorney
N.Y. Reg. No. 2481414
Office of the United States Attorney
Eastern District of North Carolina
(on detail to the USAO-DC)
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Mike.James@usdoj.gov
Telephone: (919) 856-4530