**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**,

**v.**

**LEO CHRISTOPHER KELLY**,

      *Defendant*.

**Case No. 1:21-CR-708-RCL-1**

## <u>MEMORANDUM OPINION</u>

Defendant Leo Christopher Kelly was convicted after a jury trial of seven counts stemming from his conduct during the Capitol Riot on January 6, 2021. Defense counsel for Mr. Kelly spoke to members of the jury panel after it was discharged. One member of the jury panel made statements that Mr. Kelly believes show the juror lied during *voir dire* and was biased against Mr. Kelly. Mr. Kelly thereafter moved for a new trial and judgment of acquittal under Federal Rules of Criminal Procedure 33 and 29, respectively. The government opposed.

Upon consideration of Mr. Kelly's motion for new trial and judgment of acquittal, Def.'s Mot., ECF No. 118, the government's opposition, Gov't Opp'n, ECF No. 122, the applicable law, and the whole record, the Court **DENIES** the motion.

### I.      BACKGROUND

#### A.  Procedural History

On May 9, 2023, the jury unanimously found Mr. Kelly guilty of all seven counts charged in the indictment: (1) obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2); (2) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); (3) disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (4) entering and remaining on the floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A); (5) entering and remaining in certain rooms in the Capitol Building,

40 U.S.C. § 5104(e)(2)(C); (6) disorderly conduct in a Capitol Building, 40 U.S.C. § 5104(e)(2)(D); and (7) parading, demonstrating, or picketing in a Capitol Building, 40 U.S.C. § 5104(e)(2)(G). Indictment, ECF No. 27; Minute Entry (May 9, 2023).

On July 13, 2023, Mr. Kelly moved under Federal Rules of Criminal Procedure 33 and 29 for a new trial and judgment of acquittal. Def.'s Mot. The motion raised two arguments: (1) Mr. Kelly is entitled to a new trial under Rule 33 because a juror was inherently biased and failed to disclose that bias during the Court's *voir dire* examination; and (2) Mr. Kelly is entitled to acquittal on all counts under Rule 29 because no reasonable juror could find the elements of the statutes at issue proven beyond a reasonable doubt. *See* Def.'s Mot; Gov't Opp'n. In connection with the first claim, Mr. Kelly argued that juror 1437 ("the Juror") lied to the Court during *voir dire*. The government opposed Mr. Kelly's motion and disputed its characterization of the Juror's statements. Gov't Opp'n. Mr. Kelly did not file a reply. The motion is now ripe for review.

### B. Voir Dire

The Court conducted *voir dire* over the course of two days commencing on May 1, 2023. Minute Entries (May 1–2, 2023). During *voir dire*, the Court questioned the prospective jurors about their ability to serve fairly and impartially. *See* May 1, 2023 Tr. Transcript ("Tr.") at 5. The Court also asked them about their connections to the United States Capitol. *Id.* at 13–14.[1] The Juror was among those interviewed by the Court on May 1. *Id.* at 37–44. The Court engaged the Juror in the following colloquy:

> THE COURT: You live or work near the Capitol?
> JUROR: I live about a mile from the Capitol.
> THE COURT: Where do you live?
> JUROR: Mount Vernon Square, Mount Vernon right north of us.

---

[1] The Court asked four questions regarding the United States Capitol: (1) "[d]o any of you live or work at or near the U.S. Capitol?"; (2) "[does] anyone you are close to live or work at or near the U.S. Capitol?"; (3) "were you at or near the U.S. Capitol on January 6, 2021?"; (4) "did any of you watch the events at the U.S. Capitol on January 6, 2021 on live TV at that time?" Tr. at 13–14.

THE COURT: Okay. And you watched this live on TV that day?

JUROR: Yeah, I was watching the news that morning and working from home and watched it as it all unfolded.

THE COURT: And you did say you thought you could put that aside and decide this case just on the evidence you saw here at the trial, is that right?

JUROR: Yes, I have served on a jury before, so I have -- you know, aware of how to, like, think about the law and think about the evidence and would like to think I could do that here too.

THE COURT: Okay. Any reason you couldn't be a fair and impartial juror if you were chosen to serve here?

JUROR: No.

THE COURT: Tell me how much you followed the investigation here. Did you watch the TV coverage?

JUROR: I would say I would follow it just like a normal person reading news articles and major updates about it obviously.

THE COURT: Like in the Post or –

JUROR: Yeah, yeah. I mean, I wasn't one of those people that was watching all the hearings. I was, like, reading news articles about them afterwards. And, you know, in D.C. it's hard to avoid. And yeah, I was interested in it, so…

THE COURT: Okay. Tell me your impression, if you can, of that day and what you have followed that has led you to what kind of impression?

JUROR: I mean, it was a pretty major event. I wasn't happy that it was happening, both in my city and also that people were breaking into the Capitol and there seemed to be violence going on, and obviously people died on both sides of it. So, you know, I'm glad that these cases are going to trial because I think that's important. But yeah, I generally don't think it was a good thing. You know, I am very supportive of protesters. I am very supportive of activism and people's right to protest. I think there's always like a line you have to be -- you can't cross. And so was that line crossed on January 6? Probably I guess that's what the Court is trying to determine, so...

THE COURT: Any reason you couldn't follow the law and decide whether this defendant really crossed that line under the instructions I give to this jury?

JUROR: Yeah.

THE COURT: That's what you would have to do here is decide what the facts are here in this case, whether this defendant really crossed the line of the instructions I would give the jury. Do you think you could do that fairly?

JUROR: Yeah. I mean, I think that's what the purpose of these trials is, for each individual defendant to plead -- you know, for the government to give their case and defendants to give their case, and for us as the jury to determine that. And that's, you know, why I do think I could be an impartial juror, because on my last jury, I was really impressed with everybody and how thoughtful our jury was at examining the evidence –

THE COURT: That's what –

JUROR: -- and think about the law and how to apply it even if we didn't particularly agree with the circumstances. So that would be my hope, is that –

THE COURT: What is the last case you were on?

JUROR: It was 2019. It was a drug case here in D.C.

THE COURT: I have found my juries contentious too. Now I will ask you the hardest question. If you are sitting over there in his seat, would you want somebody like you on your jury in this kind of case where you have some views?

JUROR: Yeah, I think so, because like I said, I respect the court systems and I respect the rule of law. I almost went to law school. I didn't end up going, but, you know, I think what we have in this country is really important. And I have even said to friends, like my friends who always talk about how to get out of jury duty, I tell them, like, I don't think you should try to get out of it.

THE COURT: Right.

JUROR: Like, I have friends that have had very bad jury experiences, and I have always said that I was really impressed with my jury, and if I ever was a defendant, hopefully I will never be, that I would want to have the type of jury I had. So yeah.

THE COURT: I'm glad to hear that. Was that in this court or across the street?

JUROR: It was in this building. I think it was across the room -- across the hallway in that courtroom, so...

THE COURT: Any follow-up by counsel?

(The following was heard sidebar.)

DEFENSE COUNSEL: Your Honor, I'm not sure you asked her about question No. 8, which is arrested, convicted, or charged with a crime. And I see that that is crossed on the list. And I would like to know whether or not they reached a verdict in her case and whether or not it was civil or criminal. And she made a statement that she said that the government and the defendant each have to give a case. And I want to make sure that she understands the defendant does not have to give a case and whether or not she would hold that against the defendant if he did not do a case.

ASSISTANT U.S. ATTORNEY: Your Honor, I don't have any additional follow-up, and I don't disagree with Ms. West's proposed questions.

(The following was heard in open court.)

THE COURT: I think there's another question I didn't ask you about. You, a member of your family or friends arrested for or charged with a crime or victim or witness to a crime?

JUROR: I have an extended family member that was charged with a crime, but that was a cousin, so I don't know if that counts as immediate or close. But otherwise, no one else that's close.

THE COURT: What was that one?

JUROR: My cousin, ten years ago, was charged -- I don't actually know what the charge was, but it was, like, kind of like petty crime stuff. It was up in Boston. But he was convicted and went to jail for a few years.

THE COURT: What was the crime?

JUROR: He was involved -- I don't know what the actual crime was. He was involved with people who were -- I think there was something to do with parking meters and maybe parking meters being broken into and being stolen. And he was caught up with someone else, and they got in a fight with people, and because he had a record, I think they kind of threw the book at him, so...

THE COURT: From what you know, and I know you may not know all the facts, was he fairly treated by the criminal justice system?

JUROR: I guess. I mean, I don't have a lot of opinion -- I wasn't like super close with him back then. We are closer now. But I know he's very much like, I never want to go back and

4

I want to live my life straight. And I'm like, great, we are going to support you in every way we can.

THE COURT: In the case when you were on the jury, did the jury reach a verdict?

JUROR: Uh-huh.

THE COURT: Was that civil or criminal?

JUROR: Criminal.

THE COURT: It was a drug case?

JUROR: Drug case, yeah.

THE COURT: And in the -- I missed what the other point was. Let me ask you. Oh, I know what it was. I think you said something about you understand the defendant doesn't have to put on a case at all because the burden is on the government to prove everything?

JUROR: Uh-huh.

THE COURT: So the defendant doesn't have to testify, doesn't have to call any witnesses or do anything. The total effort has to be by the government. The defendant doesn't have the burden to even testify or call a witness or do anything. Do you understand the government has the burden of proof –

JUROR: Yes.

THE COURT: -- and the burden of producing evidence? You don't have any problem with that?

JUROR: No. In my last case, the defendant didn't testify, and that wasn't an issue in how we came to our conclusion.

THE COURT: Okay. Thank you very much.

JUROR: Thank you.

THE COURT: You can step down.

(Prospective juror exited the courtroom.)

THE COURT: Any challenge for cause?

ASSISTANT U.S. ATTORNEY: None on behalf of the government.

THE COURT: She will be in the group. We will go to 18.

*Id.*

Besides the follow-up questions proffered by defense counsel during the sidebar, which encompassed the Juror's prior jury service, understanding of the burdens of proof in criminal cases, and criminal history, neither Mr. Kelly nor the government asked the Court to ask the Juror any other questions. *Id.* Defense counsel did not ask the Court to inquire into the Juror's employment history or whether the Juror had ever worked at the United States Capitol. *Id.* And neither Mr. Kelly nor the government challenged the Juror for cause. *Id.* at 44.

### C.  Post-Trial Conversation with Members of the Jury Panel

Defense counsel apparently spoke with members of the jury panel in the hallways of the courthouse shortly after they rendered their verdict and were dismissed. Def.'s Mot. at 1. According to defense counsel, the Juror agreed to speak with her. *Id.* Defense counsel alleges that the Juror told her, in the presence of "at least 7 other jurors," that the Juror "used to work at the [Capitol] as an intern, and once you're in, you're in. Even I couldn't go on the floor." *Id.* The Juror also allegedly stated, "this is our city. We live here. We know what went on." *Id.* The government was not present for this exchange. Gov't Opp'n at 4.

For the purposes of this motion, the Court will assume that defense counsel had permission to speak to members of the jury panel and that the Juror in fact made the statements ascribed to her by defense counsel.[2]

## II.    LEGAL STANDARDS

Mr. Kelly has filed a motion asking the Court to grant him a new trial pursuant to Federal Rule of Criminal Procedure 33. He also requests a judgment of acquittal under Rule 29.

### A.  Federal Rule of Criminal Procedure 33

Rule 33 authorizes a court to vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A defendant "is entitled to a fair trial but not a perfect one, for there are no perfect trials." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 553 (1984) (quotations and citations omitted)."[G]ranting a new trial motion is warranted

---

[2] Defense counsel asserts that the Court, acting *ex parte*, granted her permission to speak to jurors *ex parte*. *See* Def.'s Mot. at 1. Under Local Criminal Rule 24.2, after the jury has been discharged, "no party or attorney shall speak with a juror concerning the case except when permitted by the Court for good cause shown in writing." LCvR 24.2(b). So, defense counsel has put the Court in the posture of having violated its own rules. The Court is troubled by defense counsel's claim that she received permission. Over the last ten years, this Court has never granted permission to counsel to speak with a jury that rendered a verdict. Although defense counsel "asked permission of the Court's law clerk and courtroom deputy [to speak to the jury]," and asserts that "[p]ermission was granted," defense counsel does not state by whom. Def.'s Mot. at 1. In any event, the Court's concerns do not affect the outcome of this motion. Mr. Kelly is not entitled to a new trial.

only in those limited circumstances where 'a serious miscarriage of justice may have occurred.'"
*United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014) (quoting *United States v. Rogers*, 918 F.2d 207, 213 (D.C. Cir. 1990)). A motion for new trial is "committed to the sound discretion of the trial judge." *United States v. Reese*, 561 F.2d 894, 898 (D.C. Cir. 1977); *see also United States v. Stone*, 613 F. Supp. 3d 1, 27 (D.D.C. 2020). The decision is subject to reversal "only for abuse of discretion or misapplication of the law." *Reeves*, 561 F.2d at 898. This is because trials courts are "obviously . . . the tribunal best qualified to weigh the relevant factors." *United States v. Williams*, 822 F.2d 1174, 1189 (D.C. Cir. 1987). Trial courts' factual determinations are given "great weight." *United States v. White*, 116 F.3d 903, 929–30 (D.C. Cir. 1997) (per curium) (quoting *Hobson v. Wilson*, 737 F.2d 1, 49 (D.C. Cir. 1984), *cert. denied*, 470 U.S. 1084 (1985)).

Mr. Kelly seeks a new trial under Rule 33 based on alleged juror misconduct during *voir dire*. *See* Def.'s Mot. A defendant seeking a new trial based on a juror's statements during *voir dire* must demonstrate both that the juror "failed to answer honestly a material question on *voir dire*" and "that a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556. Additionally, a new trial is proper only if the juror's falsehood at *voir dire* "demonstrated actual bias." *United States v. North*, 910 F.2d 843, 904 (D.C. Cir. 1990) (per curiam); *see also United States v. Brown*, 26 F.3d 1124, 1127 (D.C. Cir. 1994); *United States v. Boney*, 97 F. Supp. 2d 1, 5 (D.D.C. 2000).

A Rule 33 motion on grounds other than newly discovered evidence ordinarily must be filed "within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). Mr. Kelly's Rule 33 motion was filed before the deadline set by the Court and therefore is timely. *See* ECF No. 111; Def.'s Mot.

### B.  Federal Rule of Criminal Procedure 29

Rule 29 requires a "court on the defendant's motion to enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). A defendant seeking a judgment of acquittal based on insufficient evidence must show that no "rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Williams*, 836 F.3d 1, 6 (D.C. Cir. 2016). The Court "must view the evidence in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *Id.* This standard is "highly deferential" to the jury verdict. *Id.*

A Rule 29 motion may be filed or "renew[ed] . . . within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). The jury was discharged on May 9, 2023, the same day it rendered its verdict. Minute Entry (May 9, 2023). Here, the motion is untimely because it was filed sixty-five days after the guilty verdict. *See* Def.'s Mot. The Court granted Mr. Kelly's motion to extend the time for filing a motion for new trial until July 15, 2023. ECF No. 111. However, Mr. Kelly's motion for an extension of time, and the Court's order, were specific to motions for new trial under Rule 33. ECF Nos. 110 and 111. Defense counsel's motion did not request an extension of time to file or renew a motion for a judgment of acquittal under Rule 29, and the Court did not grant one. *Id.* In any event, the Court will analyze Mr. Kelly's motion for a judgment of acquittal as though it were timely.

### III.   DISCUSSION

### A.  Juror Misconduct

Mr. Kelly's Rule 33 motion for new trial fails because his allegations do not warrant a new trial under the *McDonough* factors as interpreted by the D.C. Circuit in *North*. Mr. Kelly bears the

burden of showing that: (1) the Juror failed to answer honestly a material question on *voir dire*; (2) a correct response would have provided a valid basis for a challenge for cause; and (3) the Juror's failure to answer honestly demonstrated actual bias. *McDonough*, 464 U.S. at 556; *North*, 910 F.2d at 904. Mr. Kelly fails on each point.

*First*, there is no evidence the Juror lied, withheld, or concealed information in response to questioning. The Court asked the Juror four questions regarding her connections to the Capitol. Tr. at 13–14. The Court asked whether she lived or worked at or near the Capitol, whether anyone she was close to lived or worked at or near the Capitol, whether she was at or near the Capitol on January 6, and whether she watched the events at the Capitol on January 6 on live television. *Id.* The Juror's prior internship at the Capitol is not responsive to any of these questions. And nothing about the Court's questioning or follow-up inquiries required the Juror to volunteer that information.

The Juror answered each of the Court's questions directly and truthfully. The Court knows the Juror answered truthfully because the Court thoroughly interrogated each of the Juror's answers. *Id.* at 37–44. When the Juror stated that she lived or worked near the Capitol, the Court asked the Juror to identify the exact neighborhood where she lived. *Id.* at 37. When the Juror stated that she watched the events of January 6 unfold on live television, the Court asked her to clarify the extent to which she had followed media coverage of the Capitol Riot. *Id.* at 37–38. And when the Court ask the Juror to describe her feelings regarding January 6, the Juror responded candidly, explaining, "I wasn't happy that it was happening, both in *my city* and also that people were breaking into the Capitol and there seemed to be violence going on, and obviously people died on both sides of it[, s]o, you know, I'm glad that these cases are going to trial because I think that's important[, b]ut yeah, I generally don't think it was a good thing." *Id.* at 38–39 (emphasis added).

The Court then asked the Juror whether she could "follow the law and decide whether this defendant really crossed that line [of illegality] under the instructions I give to this jury." *Id.* at 39. The Juror responded by affirming that she would follow the Court's instructions and that she believed she could serve impartially. *Id.*

The Juror was not asked whether she was ever an intern, volunteer, or employee at the Capitol. *Id.* at 37–44. She was not asked whether she was familiar with the layout of the Capitol. *Id.* Rather, she was asked about her connections to the Capitol *on* January 6 and her feelings about the events of that day. *Id.* The Juror described her feelings to the Court. *Id.* at 38–39. The Juror explained to the Court's satisfaction that she understood the proper role of the jury and would decide the case fairly and impartially. *Id.* at 39. In other words, the Juror answered the Court's questions directly and truthfully. The Juror concealed nothing. And the Juror's candid answers permitted the Court to gauge her credibility and determine that she would follow the Court's instructions. Because the Juror did not answer a material question on *voir dire* untruthfully, or deliberately conceal material information, Mr. Kelly's motion fails at the first *McDonough* factor. *See McDonough*, 464 U.S. at 556.

*Second*, the Juror's statements during *voir dire* and during the post-verdict conversation with defense counsel are entirely consistent. According to Mr. Kelly, the Juror told defense counsel that she "used to work at the [Capitol] as an intern, and once you're in, you're in[, e]ven I couldn't go on the floor," and further, "this is *our city*[, w]e live here[, w]e know what went on." Def.'s Mot. at 1 (emphasis added). The Court has already noted that it did not ask the Juror whether she previously worked at the Capitol. Nor did defense counsel ask the Court to ask this question. Tr. at 41. So, nothing about the first part of the Juror's post-verdict statement is inconsistent with her statements during *voir dire*. The second part of the Juror's post-verdict statement is also consistent.

During *voir dire*, the Juror expressed that she was not "happy that [the events of January 6 were] happening in . . . *my city*." *Id.* at 38 (emphasis added). This is entirely consistent with the Juror's post-verdict statement that she knew "what went on" in "*our city*." Def.'s Mot. at 1 (emphasis added). That the Juror's *voir dire* and post-verdict statements are consistent demonstrates that nothing the Juror told the Court about her ability to serve fairly and impartially was false.

*Third*, defense counsel had the opportunity to ask the Juror whether she had ever worked in the Capitol but failed to do so. Tr. at 41. Both parties were given the opportunity to propose questions to the Court before the commencement of *voir dire*. The Court has reviewed the parties' joint proposed *voir dire* questions as well as Mr. Kelly's supplemental requests. ECF Nos. 78-1 and 89. Mr. Kelly never proposed asking the prospective jurors whether they had ever been employed or worked in the Capitol. *Id.* Moreover, before concluding its interview of the Juror, the Court asked counsel for the government and defense counsel whether they had any follow-up questions. Tr. at 41. Defense counsel had several. *Id.* Defense counsel asked the Court to inquire into whether the Juror had ever been arrested, convicted, or charged with a crime; whether she had reached a verdict in a previous case in which she had served as a juror; and whether she understood that Mr. Kelly did not have to present a case in his defense. *Id.* Notably, defense counsel proffered these follow-up questions after the Juror had already affirmed that she did not work at or near the Capitol and after she had already explained that she was not "happy that [the events of January 6 were] happening in . . . *my city*." *Id.* at 37–38, 41. Defense counsel plainly had the opportunity to solicit additional information regarding the Juror's employment history and feelings regarding the events of January 6 but failed to do so. *Id.* at 41. The Court surmises that defense counsel did not raise these additional questions because she was otherwise satisfied with the Court's line of inquiry. Defense counsel's current protestations are belied by the record.

*Fourth*, even if the Juror had disclosed their prior internship at the Capitol, the Juror would not have been stricken for cause. In *United States v. Maxwell*, No. 20-cr-330 (AJN), 2022 WL 986298, at *4 (S.D.N.Y. Apr. 1, 2022), the parties learned after the trial that a juror failed to disclose during *voir dire* that they were the victim of sexual abuse. The court denied the defendant's Rule 33 motion, in part because it found that responses during *voir dire* disclosing the history of sexual abuse would not have provided a sufficient basis to strike the juror for cause. *Id.* at *11. The court reached this conclusion because the juror "repeatedly and credibly affirmed that his personal history of sexual abuse would not affect his ability to serve as a fair and impartial juror." *Id.* Here, it is evident that even if the Court had learned of the Juror's prior employment history during *voir dire*, the Juror's repeated and credible affirmations that she could serve fairly and impartially would have overcome any for cause challenge. Tr. at 38–39. Indeed, the Juror's prior employment history is nothing like the juror's admission of victimhood in *Maxwell*. Although Mr. Kelly claims that "[a]nyone who worked at the Capitol has the life experience of being in the exact same position as everyone present on January 6, 2021," and that therefore, the Juror "is a victim of the J6 riot," this contention is wholly unsubstantiated and is not supported by the Juror's post-verdict statements. *See* Def.'s Mot. at 1, 6. Basic familiarity with the Capitol Riot does not evince bias, let alone bias specifically directed against Mr. Kelly. *See United States v. GossJankowski*, No. 21-cr-123 (PLF), 2023 WL 395985, at *6 (D.D.C. Jan. 25, 2023). There is no evidence that the Juror was a victim of the Capitol Riot such that she was biased, and even if she were a victim, the Court's careful questioning during *voir dire* was sufficient to dispel any risk that she would fulfill her role partially and without regard for the Court's legal instructions. *See Irvin v. Dowd*, 366 U.S. 717, 722–23 (1961).

*Fifth*, several other jurors empaneled in this case had stronger connections to the Capitol than the Juror, were not challenged for cause, and are not challenged here. At least four other empaneled jurors had connections to the Capitol that were disclosed during *voir dire*. Juror 1895 disclosed that he worked in an office near the House Office Building on January 6 and had friends and clients who worked at the Capitol and were forced to evacuate on January 6. Tr. at 99–100. Juror 330 disclosed that he worked near the Capitol on January 6 and was at work that day. *Id.* at 193. Juror 2173 disclosed that his sister works for a Congressperson at the Capitol. *Id.* at 82. Juror 1753 disclosed that the juror's nephew had worked for the U.S. Capitol Police since December 2022. *Id.* at 186–87. None of these jurors were challenged for cause. *Id.* at 83, 105, 193, 197. Mr. Kelly did challenge juror 277, who worked as a Senate staffer during 2021. *Id.* at 202. But the Court denied that challenge based on its assessment of the juror's credibility. *Id.* at 206. The same reasoning applies here. Even if the Court assumes that the Juror lied during *voir dire*, the Juror's prior employment history would not have sustained a for cause challenge because she credibly attested that she would serve fairly and impartially and follow the Court's legal instructions.

In summary, the Juror did not fail to honestly answer a material question on *voir dire*. Full disclosure of the Juror's prior employment history would not have provided a valid basis for a challenge for cause. And Mr. Kelly has not shown that omission of the Juror's prior employment history demonstrated actual bias. Mr. Kelly's motion for new trial under Rule 33 is denied.

## B. Sufficiency of the Evidence

Mr. Kelly's Rule 29 motion for judgment of acquittal fails because it is untimely and because he is unable to show that no "rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Williams*, 836 F.3d at 6. Mr. Kelly argues there was insufficient evidence from which the jury could conclude that Mr. Kelly intended to obstruct a judicial

13

proceeding or had knowledge that the Capitol Grounds were restricted. Def.'s Mot. at 6–7. But the government presented ample evidence to support the jury's verdict.

The Court will not recount the entire corpus of evidence admitted at trial. Instead, it will note only that the jury heard evidence that Mr. Kelly had been closely following alleged election fraud; intended to come to D.C. to "stop the steal"; attended former President Trump's rally at the Ellipse; took photographs and videos of fellow rioters; personally observed tear gas, law enforcement perimeters, and rioters climbing scaffolding; entered the Capitol Building and personally observed violent property destruction within the Building; breached a police line; and entered the Senate Chamber, climbed on the dais, and filmed himself stating that he was "send[ing] a message to all the tyrants, communists, and globalists that this is our nation and not theirs." Gov't Exs. 104.5, 107, 108, 109, 306, 307, 313, 403, 404, 405, 406, 410, 504, 604.1, 702, 703, 704, 900; May 5, 2023 Tr. Transcript at 22–25, 28–29, 32, 52–53.

The jury also heard testimony from Mr. Kelly's father. Mr. Kelly's father acknowledged that the scene around the Capitol was "shocking." May 5, 2023 Tr. Transcript at 223. The elder Mr. Kelly ultimately did not advance on the Capitol because of the prevalence of tear gas and the "chaos" of the day's events. *Id.* The jury was aware, of course, that the younger Mr. Kelly advanced on the Capitol despite the circumstances that deterred his father. The contrast between the younger Mr. Kelly and his father could not have been lost on the jury.

Ultimately, the jury was faced with evidence that Mr. Kelly pushed past lines of police officers, engaged in disruptive conduct on the Senate floor, and made various statements evincing his intent to stop the certification of President Biden as winner of the 2020 presidential election. From this, the jury could conclude beyond a reasonable doubt that Mr. Kelly knowingly intended to obstruct, impede, and interfere with law enforcement officers and the orderly conduct of

government business, that he did so with consciousness of wrongdoing by means he knew were unlawful, and that he did so for the benefit of former President Trump.

Viewed, as it must be, in the light most favorable to the government, and reflecting the requisite deference owed to the jury's verdict, the Court finds that there was sufficient evidence from which a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *See United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002). Even setting aside timeliness issues, Mr. Kelly's motion for a judgment of acquittal under Rule 29 is denied.

## IV.    CONCLUSION

Based on the reasoning above, this Court will **DENY** Mr. Kelly's motion for new trial and judgment of acquittal. A separate Order consistent with this Memorandum Opinion shall issue.

**IT IS SO ORDERED**.

Date: August __16__, 2023

Royce C. Lamberth
United States District Judge