UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | |
| | : | Case No. 21-CR-00708(RCL) |
| **LEO KELLY,** | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL

Pursuant to 18 U.S.C. §§ 3141(b) & 3143(b) and Fed. R. Crim. P. 46(c) & 38(b)(1), defendant LEO KELLY respectfully moves for release pending appeal on the conditions of release previously imposed. Release is proper—indeed, statutorily warranted—because Mr. Kelly poses no flight or safety risk, his appeal is not for the purpose of delay, and his appeal raises substantial questions of law and fact that, if decided in his favor, would likely result in a dismissal of the charges against him. The government opposes this motion.

### Background

A jury trial in this criminal matter concluded on May 9, 2023. The Government charged Mr. Kelly ("Kelly") by Indictment with count one being the felony obstruction count. That count charged:

1

On or about January 6, 2021, within the District of Columbia and elsewhere, LEO CHRISTOPHER KELLY, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. Sections 15-18.

This is a violation of 18 U.S.C. § 1512(a)(2).

He was also charged with the following: Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2); Willfully and knowingly entering and remaining on the house floor of a House of Congress in violation of o 40 U.S.C. § 5104(e)(2)(A); Willfully and knowingly and with the intent to disrupt the orderly conduct of official business in violation of 40 U.S.C. § 5104(e)(2)(C); Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). *See* ECF No. 27 (Indictment). In support of its case, the Government introduced testimony from multiple witnesses and introduced numerous exhibits. The defense presented numerous exhibits, one fact witness, Mr. Kelly's father, and two character witnesses. Mr. Kelly was found guilty by the jury on all counts.

On August 18, 2023 the Court Sentenced Mr. Kelly to 30 months incarceration. He remains on bond.

# Argument

## I. Standard for Release Pending Appeal

A court "shall order the release" of a defendant pending appeal if four criteria are met: (1) the defendant is not likely to flee or pose a danger to the safety of others; (2) the appeal is not for the purpose of delay; (3) the appeal raises a substantial question; and (4) the substantial question, if resolved in the defendant's favor, would likely result in reversal of all counts on which imprisonment is imposed or a reduced imprisonment sentence that would expire before the appeal concludes. 18 U.S.C. § 3143(b); *United States v. Perholtz*, 836 F.2d 554, 555, 557 (D.C. Cir. 1987). A "substantial question" is a "close question or one that very well could be decided the other way." *Perholtz*, 836 F.2d at 555. Critically, the defendant need not show he is likely to prevail on appeal. Instead, once the substantiality of an appeal question has been established, a court is to presume the defendant will prevail and asks only whether, in that circumstance, reversal or a reduced imprisonment sentence less than the duration of the appeal is likely. *Perholtz*, 836 F.2d at 555 ("[Substantiality] requires a two-part inquiry: (1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to reversal [or a reduced imprisonment sentence that would likely expire before the appeal concludes.]").

As illustrated by the order granting release pending appeal in *United States v. Quinn*, 416 F. Supp. 2d 133 (D.D.C. 2006) (Bates, J.), the "substantial question" criterion does not require Mr. Kelly to persuade this Court that its rulings to date in his case have been in error. In *Quinn*, although the court had already found the defendant's legal arguments unpersuasive, the defendant's position "was not without some support in that body of law" the defendant had invoked. *Id*. at 136. Where a question is "susceptible to a different answer," release pending appeal may be granted. *Id.*; *see also United States v. Kaplan*, No. 02-CR-0883, 2005 WL 3148060, at *2 (S.D.N.Y. Nov. 22, 2005) ("The question of whether evidence proves actual knowledge or conscious avoidance 'is a fine line—precisely the type of fine line that makes the decision to give the conscious avoidance charge a "close" question.' ")). Moreover, the movant only needs to demonstrate one substantial question to satisfy 18 U.S.C. § 3143(b)(1)(B). *Quinn*, 416 F. Supp. 2d at 137 n.4.

With respect to the final criterion, it is plainly satisfied when resolution of a substantial question on appeal would result in reversal of the conviction. *Perholtz*, 836 F.2d at 555; *Quinn*, 416 F. Supp. 2d at 136-37.

    A.    <u>**Release is Required as All Statutory Criteria Are Met**</u>

Release is required because Mr. Kelly poses no flight or safety risk, his appeal raises substantial questions and therefore is not for the purpose of delay,

and resolution of questions on appeal in Mr. Kelly's favor would likely result in a new trial for him.

### 1. There is no flight or safety risk.

Mr. Kelly has been released on conditions and a personal recognizance bond since his initial appearance in this case, which required findings that he will appear as required and not endanger anyone. 18 U.S.C. § 3142(b). As this Court stated at sentencing, those findings have proved accurate over the course of this case. There is no flight or safety risk here.

### 2. The appeal raises substantial questions and therefore is not for the purpose of delay.

On appeal, Mr. Kelly intends to challenge his conviction on grounds that pose substantial questions and not for purposes of delay.

*First*, Mr. Kelly will appeal the denial of his motion to admit evidence of the Capitol Police Operational Plan dated January 5, 2021 ("Operational Plan"), which was used to prepare for the events on the following day and was relied upon by members of the Capitol Police, government legal counsel, and others to establish and enforce the restricted perimeter for the operational period that included January 6, 2021. *See* ECF. No. 96. A trial brief was submitted to this Court explaining the relevant and exculpatory nature of the information in the CDU OPS plan. *Id*. In that document, defense counsel explained the importance of this OPS plan. This Court ruled that the OPS plan could not be in evidence as an exhibit for

5

the defense and that was in error. It was only when the government later during trial had to confess that their witness, Tia Summers, had materially mis-stated, on the stand during her testimony, that the red lined map had been created before January 6, 2021, that the government stipulated only to the map at the back of the OPS plan rather than the entire OPS plan. *See* ECF No. 104, Stipulation, Exhibit 800. The entire OPS plan was relevant to explain how the perimeter would be enforced by officers on the ground that day. The map attached to the end of the OPS plan in and of itself is not the full story. All this shows is that there is another map. The OPS plan contained other exculpatory information that Mr. Kelly was not allowed to show the jury. It goes to the state of mind of the people enforcing the perimeter which is why Mr. Kelly believed it to be material to his defense.

The Operational Plan clearly showed that Capitol Police were put on notice, prepared for, and planned to allow unspecified members of the public to protest on the steps of the Capitol on January 6. (quoting OPS plan that informed Capitol Police to expect an event labeled "Donald, You're Fired" just outside the Capitol on January 6). The Court restricted Defendant rather than allowing Defendant to question Capitol Police witnesses about the Operational Plan and its significance to the alleged "restricted" areas. Preventing Mr. Kelly from eliciting testimony about Capitol Police planning for the "Donald, You're Fired" event and other aspects of the Operational Plan deprived Defendant of his right to present exculpatory

evidence pertaining to elements of the charged offenses—that is, evidence to show that the restricted perimeter was not established according to the government's red-lined map about January 6 and that Capitol Police themselves, as late as January 5, did not intend to enforce a perimeter around the Capitol that excluded all protests and/or protesters on January 6, 2021.

There is at least a substantial question on appeal whether the legal or factual premises of that decision were erroneous and prejudicial to Defendant. The reason for the differences between the two maps was never explored as a result of the Court's ruling excluding the OPS plan.

The Court's exclusion of the Operational Plan kept Mr. Kelly from presenting exculpatory and relevant evidence about the lack of restriction for at least one event that day with a purported permit to gather on the steps of the Capitol during the time period that Mr. Kelly was alleged to have been on the grounds. The expected "Donald, You're Fired" event was listed under "Current permitted events for this operational period" in the OPS plan and was important to show what the Capitol Police regarded as the actually restricted area that day. The Operational Plan goes to the heart of what Capitol Police planned for and expected on January 6, 2021, with respect to the restricted area, irrespective of whether the government actually issued a permit to organizers of a "Donald, You're Fired" gathering at the Capitol.

Tia Summers was called by the government to testify and testified about the existence of the red line perimeter. She materially misstated how and when the map was created and for what purpose. Her testimony mislead the jury into believing that the red lined map had been in existence prior to January 6, 2021. This was only partially corrected with the stipulation that the government offered to the defense that included the map. The defendant should have been able to put in the full OPS plan but this Court prohibited this. The Operational Plan supports a different narrative of how the Capitol Police prepared for January 6 and who they were informed, through the document, had "permits" to be within the grounds. Additionally, the Operational Plan shows that there were no tickets or determined number of protestors that the Capitol Police were told to expect, thus leaving the entire universe of protestors that day as potentially allowed within the purported restriction to attend the event on the Capitol Steps.

*Second*, Mr. Kelly also intends to appeal the sufficiency of the evidence issue that this Court denied in his motion for new trial. The appeal will challenge the denial of Mr. Kelly's motion to dismiss the felony obstruction count and the application of a three-level enhancement for substantial interference with the administration of justice pursuant to U.S.S.G. § 2J1.2(b)(2). It is therefore not for the purpose of delay.

As the Court is aware, the legal propriety of the felony

obstruction count, charging 18 U.S.C. § 1512(c)(2), was also contested in this case. First, the statutory language, legislative history, and legal precedent reflect that §1512(c)(2) prohibits only the corrupt obstruction of tribunal-like proceedings before Congress related to the administration of justice, not a proceeding like the certification of the electoral college vote. Second, the conduct Mr. Kelly was accused of committing cannot qualify as conduct that "otherwise obstructs, influences, or impedes" an official proceeding, as § 1512(c)(2) is limited by § 1512(c)(1). As such, subsection (c)(2) prohibits only conduct that undermines an official proceeding's truth finding function through actions impairing the integrity and availability of evidence.[1] Third, as charged, § 1512(c)(2) does not provide fair notice that "official proceedings" includes proceedings unrelated to the administration of justice, and the statute's mens rea requirement—that the criminal act be committed "corruptly"—lacks a limiting principle, rendering the statute unconstitutionally vague as applied to Mr. Kelly.

      Mr. Kelly intends to ask the Court of Appeals to reverse his conviction on the basis that the Court's ruling on this issue improperly denied him fundamental due process.

---

[1] Undersigned counsel is well aware of the Circuit decision in *Fischer* but at the same time knows that many more J6 cases have been appealed to the D.C. Circuit and are raising this issue.

*Third,* Mr. Kelly intends to appeal the Court's denial (ECF No. 132) of his motion for new trial with regard to the rogue juror issue. *See* ECF No.'s 118, 120. Mr. Kelly should have at least had an opportunity to have a hearing on this issue. Not allowing this was a denial of due process.

**Resolution of one or more of these questions in Defendant's favor would justify acquittal or a new trial.**

The appeal questions, if decided in Mr. Kelly's favor, would likely result in a new trial.

If he wins on appeal, his sentence length would be substantially different. The current median time interval from filing of a notice of appeal to disposition in the D.C. Circuit is 11.3 months.[2] Under this scenario, Mr. Kelly will have certainly completed a custodial sentence before his appeal concludes and if his case is reversed, he will have spent most likely a year at least in prison.

The appeal of Mr. Kelly's issue regarding the Operational Plan, if successful, would warrant a remand for a new trial so that Defendant may have the Court exercise discretion "unfettered by erroneous legal thinking." *Write v. United States*, 508 A.2d 915, 919 (D.C. 1986). Furthermore, if the Court of appeals finds there was insufficient admitted evidence as to any count, Mr. Kelly's conviction on

---

[2] U.S. Courts of Appeals—Median Time Intervals in Months for Cases Terminated on the Merits, by Circuit, During the 12-Month Period Ending September 30, 2021 (Table B-4), available at https://www.uscourts.gov/sites/default/files/data_tables/jb_b4_0930.2021.pdf.

such count(s) would be reversed. *See United States v. Lucas*, 67 F.3d 956, 961 (D.C. Cir 1995) (mandating judgment of acquittal due to insufficient evidence).

## Conclusion

For the foregoing reasons, Defendant Leo Kelly respectfully moves for release pending appeal on the conditions of release previously imposed by this Court.

Respectfully submitted,

/s/ *Kira Anne West*
Kira Anne West
DC Bar No. 993523
712 H. Street N.E., Unit 509
Washington, D.C.  20002
(202)-236-2042
kiraannewest@gmail.com
Attorney for Mr. Leo Kelly


/s/   Nicole Cubbage
Nicole Cubbage
DC Bar No. 999203
712 H. Street N.E., Unit 570
Washington, D.C.  20002
703-209-4546
cubbagelaw@gmail.com

<u>Certificate of Service</u>

I certify that a copy of the forgoing was filed electronically for all parties of record on this 14th day of September, 2023.

    /s/  *Kira Anne West*
KIRA WEST