# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **No. 21-cr-708-RCL** |
| **v.** | : | |
| | : | |
| **LEO KELLY,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S
## MOTION FOR RELEASE PENDING APPEAL

The United States of America, by and through her counsel, respectfully opposes defendant Leo Kelly's motion, ECF 139, for release pending appeal. As this Court knows, the defendant was convicted of multiple crimes, including felonious Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2). Additionally, he was convicted of multiple misdemeanor offenses, which separately incurred penalties for his crimes on January 6, 2021. This Court imposed a sentence that included a term of 30 months' incarceration which the defendant has not yet begun to serve. Although the defendant has filed a notice of appeal, ECF 137, neither his motion nor the record in this case raise any substantial questions of law, and thus, the motion for release must be denied.

## I.    Background

The government need not belabor the procedural history of this case. As described in this Court's memorandum opinion, ECF No. 131 (August 16, 2023), the evidence was sufficient to establish beyond a reasonable doubt that the defendant "knowingly intended to obstruct, impede, and interfere with law enforcement officers and the orderly conduct of government business, that he did so with consciousness of wrongdoing by means he knew were unlawful, and that he did so for the benefit of former President Trump." *Id.* at 14-15. As shown in a succinct but vigorous

recitation of the facts, the jury was "faced with evidence that [the defendant] pushed past lines of police officers, engaged in disruptive conduct on the Senate floor, and made various statements evincing his intent to stop the certification of President Biden as winner of the 2020 presidential election." *Id.* at 14. As such, the defendant was appropriately convicted of all crimes as charged. *See also* ECF No. 122 (describing the government's post-trial summary of the evidence).

On September 14, 2023, the defendant filed the instant motion, claiming *inter alia* that his convictions pose "substantial questions." ECF No. 139-1, at 5. According to the defendant, this Court's ruling disallowing the admission of a U.S. Capitol Police (USCP) operational plan for January 6, 2021 was legal error, such that it impacted the jury's verdict. *Id.* at 5-7. Additionally, the defendant claims that Captain Tia Summers, a USCP witness, "materially misstated how and when the [restricted perimeter] map was created and for what purpose." *Id.* at 8. Third, the defendant questions the legal propriety of the §1512(c)(2) charge – despite the D.C. Circuit's ruling in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). And finally, the defendant believes that his prior and unsuccessful Rule 33 Motion for a New Trial, ECF No. 118, will present a "substantial question" about a "rogue juror" issue. ECF No. 139-1, at 10. On all counts, the defendant is incorrect. None of these issues raise a substantial issue on appeal, and thus, his motion for release from detention must be denied.

## II.     Applicable Legal Principles

"[A] person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal" "shall . . . be detained, unless [the Court] finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" and "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in . . . a reversal [or] an order for a

new trial." 18 U.S.C. § 3143(b)(1)(B)(i)-(ii). Section 3143(b) "requires a two-part inquiry: (1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to [a reduced sentence]?" *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987); *see also United States v. Rivera*, No. 3088, 2023 WL 1484683 (D.C. Cir. Jan. 30, 2023) (*per curiam* order denying a stay of sentence for a Capitol riot defendant who failed to show his appeal presented substantial questions of law or fact likely to result in reversal, a new trial, a sentence that did not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process) (citing 18 U.S.C. § 3143(b)(1)(B) and *Perholtz*). A "substantial question" is "a close question or one that very well could be decided the other way." *Id.* at 555-56. The standard is "more demanding" than one that merely requires the issue to be "fairly debatable" or "not frivolous." *United States v. Libby*, 496 F. Supp. 2d 1, 4 (D.D.C. 2007).

In *Perholtz*, the D.C. Circuit denied the defendants' bail motion based on their claim that the then-recent Supreme Court decision in *United States v. McNally*, 483 U.S. 350 (1987), invalidating the "intangible rights" theory of mail fraud prosecution, created a "substantial question" on appeal from the defendants' mail fraud convictions. In deciding the issue, the D.C. Circuit noted that although the defendants' claims were not "frivolous, we do not find that it raises a close question." *Id.* at 561. Under the *Perholtz* standard, even a case that presents novel issues does not necessarily present a substantial question. *See Libby*, 498 F. Supp. 21 at 15-21 (holding whether a district court should have applied different factors as to the intersection between special counsel and the appointments clause did not present a close question).

### III.     Argument

The defendant's muddled motion appears to fundamentally misunderstand the current state of the law, and the effect of certain evidence on the case. Even a cursory examination of each of the defendant's claims falls apart under meaningful scrutiny. Thus, each of his claims do not present a substantial question, and would not, in any event, warrant a reversal or a new trial. Thus, this Court should deny his claims.

### A.   The Defendant Fails To Show Any Substantial Question Arising From The Decision To Exclude Irrelevant Hearsay

The defendant protests that a substantial question supporting release pending appeal arises from this Court's decision to deny admission of a USCP Civil Disturbance Unit operational plan. There is no merit to this argument because the defendant fails, and failed during trial, to show any basis for admitting the operational plan in the first place. Moreover, a trial court's decisions to exclude evidence are treated with deference and reviewed for abuse of discretion. *United States v. Wilson*, 160 F.3d 732, 742 (D.C. Cir. 1998); *United States v. Pringle*, No. 00-3024, 2000 WL 584585 (D.C. Cir. Sept. 20, 2000). Given the deference afforded to this Court's evidentiary rulings, the likelihood that exclusion of the operational plan would generate a substantial question meriting continued release is non-existent.

During his trial, the defendant sought to challenge charges based on his unlawful conduct within a restricted area by seeking admission of the operational plan. According to the defendant, the plan referred to a supposedly lawful "Donald Your Fired" protest occurring "just outside" the Capitol on January 6, and the defense sought introduction of the plan for the truth of that assertion. The operational plan and its contents, however, were hearsay. In his motion, the defendant does not argue otherwise and offers no exception to the hearsay rule to justify the plan's admission into evidence. Accordingly, there was no error, let alone an abuse of discretion, in the decision to

exclude the plan, and thus, no substantial question arises that would support the defendant's continued release.

Additionally, the defense failed to establish that the operational plan had any relevance to the charges against him. According to the defendant, the plan's reference to a protest supported a claim that protesters somehow were permitted on the Capitol grounds, within the restricted area, which, for reasons never explained, meant the restricted area somehow differed from what the prosecution alleged, and that in some unspecified way, the protest would reveal USCP officers' states of mind and understanding of the restricted area. These assertions are flawed for many reasons, including the fact that the mental state of officers not on trial was not an element of any offense and had no relevance.

The defendant's only cognizable argument is that the operational plan contained a single reference to an alleged protest lawfully (according to the defense) occurring within the restricted perimeter on January 6, 2021. *Id.* at 7. As explained throughout trial, *if* the defendant was aware of a lawful protest within the restricted perimeter, then he could arguably claim at least an initial belief that his presence was lawful or authorized. But the evidence did not bear such fruit. Instead, the defendant was on notice of a different protest occurring *outside* of the restricted perimeter. *See* 5-5-23 Tr., at 200 (explaining that the family had intended to go to the 'Jericho March' outside of the Capitol). This 'Jericho March' was unconnected to the alleged "Donald, You're Fired" event that was allegedly occurring within the restricted perimeter on January 6.[1] In other words, what

---

[1] To be clear, the United States disputes the claim that *any* protest was permitted within the restricted perimeter on January 6, 2021. As explained in pretrial litigation, the operational plan was not gospel – rather it was an *initial* plan to get the U.S. Capitol Police ready to implement the perimeter in the first place. *See, e.g.*, ECF No. 92, at 4-5. Indeed, in a different trial, the same opposing counsel in this case called the U.S. Capitol Police Lieutenant in charge of special permitting, who testified explicitly that no one was given a demonstration permit for an assembly within the restricted perimeter on January 6, 2021. *Id.; see also United States v. Anthony Griffith*,

was known to the defendant before and during the riot – the state of mind that actually matters for the purposes of the Court's analysis – was completely unconnected to the contents of the operational plan. *This* defendant did not know about the contours of the application process for permits to protest and had no knowledge of the "Donald, You're Fired" protest mentioned in the operational plan. The plan was thus irrelevant. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Therefore, no substantial question arises from the decision to exclude the operational plan from evidence.

### B.   The Defendant's Concept of the Restricted Perimeter Is Flawed

In a recurring distortion of facts, the defendant continues attempts to fit a square peg in a round hole, particularly with respect to the restricted perimeter. According to the defendant, the operational plan promulgated by the U.S. Capitol Police on or about January 5, 2021 represents "exculpatory information that [the defendant] was not allowed to show the jury." ECF No. 139-1, at 6. But the defendant fails to identify exactly what was exculpatory about the plan that he possessed before trial. He fails to explain why the general creation of a restricted boundary around the U.S. Capitol the day before the riot exonerates him and others. He barely attempts to explain how "other aspects" of the plan "deprived [him] of his right to present exculpatory evidence." *Id.* at 6. Instead, he waves the contents of the plan as some sort of talismanic incantation that will change what the restricted perimeter looked like before a thousand-person plus riot helped destroy the barrier intended to protect the United States Capitol during the certification proceeding.

But as the government explained repeatedly before and during trial, the defendant's entire theory is misplaced. *See, e.g.*, ECF No. 92, at 5 (explaining the defendant's fixation on the

---

21-cr-244-CKK, ECF No. 133, at 1 (explaining that the source of the operational plan's reference to the "Donald, You're Fired" march was a website screengrab, not an actual application to protest).

restricted perimeter). Instead, as was explained *ad nauseum* throughout trial, the map – Exhibit 1 – represented an overhead pictorial representation of where the barriers approximately existed before the riot on January 6, 2021. When Captain Summers testified, she explained that on January 6, 2021, the U.S. Capitol Police – in conjunction with other law enforcement agencies – established a restricted perimeter to protect the Capitol. 5-3-23 Tr., at 53. Specifically, Captain Summers testified that the map – Exhibit 1 – was a "fair and accurate representation of what was the perimeter – substantially the perimeter on January 6[, 2021]." *Id.* at 56. The defendant did not object to its admission. *Id.*



*Exhibit 1 – Restricted Perimeter Map*

On cross-examination, however, the defendant's tactic (and refocus on the restricted perimeter) changed. In leading fashion, opposing counsel asked, "So it's your testimony today then that you saw this exact document before January 6?" *Id.* at 107 (referring to Exhibit 1). Although Captain Summers responded in the affirmative, she questioned whether she saw the map

before or on January 6, 2021. Based on her entire testimony, however, it was clear that she saw a map before implementation of the restricted perimeter, but was not sure it was, despite counsel's best efforts, Exhibit 1 itself. As we now know, Exhibit 1 was not the exact map she saw, because Exhibit 1 was created after January 6, 2021, highlighting the general whereabouts of the barriers, obstructions, snow-fencing, and bike racks that represented the implemented restricted perimeter before the riot began (and indeed, one that all counsel could review and replicate through discovery provided by the government).

To avoid any appearance of lack of candor to the Court or the jury, and to clarify the facts on the record, however, the parties then entered a stipulation to clarify that Exhibit 1 was indeed created after January 6, 2021. The exact stipulation provided to the jury reads as follows:

> On May 3, 2023, Captain Tia Summers testified on cross-examination that she believed she observed government's Exhibit 1 – the restricted perimeter map – on or before January 6, 2021. Your recollection controls as to what testimony you heard or recalled. That map (Exhibit 1) was actually specifically created after January 6, 2021 to reflect the general whereabouts of the physical barriers, implements, signs, obstructions, fencing, etc., that existed before the incident at the U.S. Capitol on January 6, 2021. The parties stipulate that there exists another map attached to the Civil Disturbance Unit Operational Plan, before implementation, from a January 5, 2021 report. That report is labeled as defendant's exhibit 103d.

Exhibit 800. 5-8-23 Tr., at 7-8. In addition to the stipulation, the parties agreed to the admission of the map contained within the Civil Disturbance Unit Operational Plan. That map – Exhibit 103d – showed a more expansive restricted perimeter with less technical nuance. Both maps, however, represented a large (and similar) perimeter, to include the U.S. Capitol building itself. In other words, no one was authorized to protest within the restricted perimeter, let alone the Capitol building.

In addition to the irrelevant claim addressed above that the "Operational plan [and its contents] supports a different narrative of how the Capitol Police prepared for January 6 and who

they were informed, through the document, had "permits" to be within the grounds" ECF No. 139-1-8, the defendant's other claim with respect to the restricted perimeter is that Captain Summers misled the jury in a way that demands reversal. This unfounded claim also fails.

First, Captain Summers did not mislead the jury. Such a characterization is completely unwarranted. Rather, Captain Summers appeared to give an answer that could have given the jury an impression of something that was not entirely accurate. In order to correct the record – if it needed correction in the first place – the government explained the nature of the issue and sought a stipulation – agreed upon *by the defendant* – to address the issue. Any conclusion of malice is unsupported. At no point does the defendant explain why Captain Summers supposedly misled the jury, particularly since her alleged transgression allowed the defendant to introduce the map he sought to introduce from the very beginning. This language – no different than counsel's contention that there existed a "rogue juror" – is undeserved.

In any event, the defendant fails to remotely explain how Captain Summers' testimony warrants a *reversal* – the most drastic of remedies. If her testimony actually misled the jury into "believing that the red lined map had been in existence prior to January 6, 2021," how would that affect the defendant's guilt? ECF No. 139-1, at 8. Respectfully, it would not. Rather, Captain Summers' testimony as an overview witness had very little to do with whether the defendant knowingly trespassed into a restricted perimeter. Moreover, the defendant did not merely caress the border of the perimeter, as his motion implies. Instead, he made his way to the building, inside of the Senate Chamber, and prayed during a cacophonous riot while kneeling beside the Senate dais. The idea that Captain Summers' testimony had *any* impact on the jury's conclusion that the defendant knowingly entered or remained in a place that he was unauthorized to be is as preposterous as it is belied by the evidence.

The defendant's entire argument for release pending appeal collapses when one considers that this case is not merely about the defendant's unauthorized trespass on the periphery of the restricted perimeter. Rather, the defendant entered the building, pushed past police, and disrupted the electoral college certification by occupying the U.S. Senate chamber, standing no less than one foot away from where the Vice President of the United States sat to administer the proceeding. Even if the operational plan had been admitted – somehow showing that *this* defendant truly believed he could be present on Capitol grounds – none of that would have changed the jury's verdict, because the defendant intruded into the Capitol building as far as the Senate chamber. The evidence was overwhelming as to the defendant's understanding that his presence was unauthorized. Moreover, the statute in question – 18 U.S.C. § 1752 – criminalizes entering *or* remaining in a restricted area, a legal element the defendant does not address. His claims underlying the operational plan and its partial exclusion fail.

### C.    The Legal Propriety of §1512(c)(2) is Not a Substantial Question

Here, the defendant contends that his conviction on the § 1512 count will be reversed because of the statutory construction issues related to the criminal charge. ECF No. 139-1, at 9. This argument is specious. While the defendant acknowledges binding precedent in *Fischer,* he does not attempt to explain how the D.C. Circuit's decision would result in a reversal or new trial.

In brief, given this Court's familiarity with *Fischer*, the D.C. Circuit ruled in that decision that Section 1512(c)(2) contains no requirement that the obstructive acts be done with respect to a document or record and that the alleged actions of the January 6 rioters in the cases before the panel "fall[] comfortably within the plain meaning" of the statute's prohibition. *Id*. at 335-39. *Fischer* also squarely decided, contrary to the defendant's suggestion, ECF No. 139-1, at 9, that

the joint certification proceeding qualified legally as an official proceeding for the purposes of the statute. 64 F.4th at 342-43.

As Judge Bates summarized in *United States v. Sheppard*, No. 21-cr-203 (JDB), another January 6 case, "*Fischer's* primary holding as to the *actus reus* element of § 1512(c)(2) is clear, but any potential holding as to the *mens rea* element is less so." *Sheppard*, ECF No. 105 at 4-5. "Each member of the *Fischer* panel wrote separately about the proper definition of the term 'corruptly.' None of those portions were joined by any other judge, and thus, there is no clear majority opinion on the definition." *Id.* at 11.

The *Fischer* defendants appealed to the Supreme Court, and the D.C. Circuit has stayed the issuance of its mandate pending the Supreme Court's decision. *See Fischer, et al.*, Nos. 22-3038, 22-3039, and 22-3041. The Supreme Court has yet to grant or deny *certiorari*. Here, the defendant seeks to delay sentencing indefinitely until the Supreme Court either grants *certiorari* and issues a decision or until the Supreme Court denies *certiorari* and the D.C. Circuit issues its mandate. Meanwhile, the question of the *mens rea* required to violate Section 1512(c)(2) is being addressed head-on in another January 6 case pending on appeal, *United States v. Robertson*, No. 22-3062 (D.C. Cir.).

The defendant's argument in favor of release relies entirely on speculation and hope. The Supreme Court *might* grant *certiorari* in *Fischer*. If it does, the Supreme Court *might* reverse or modify the D.C. Circuit's holding. And that reversal or modification *might* come out in a way that undermines the Court's conviction in this case. Of course, it is equally possible that any one of those things does *not* happen. In the meantime, *Fischer* remains binding precedent and the defendant's conviction stands. The possibility that something might change in the future, in the face of binding precedent, is not good cause to indefinitely delay the imposition of a sentence. Nor

does it raise a substantial question of law that is meaningfully at play. As this Court noted, the defendant unlawfully trespassed into the U.S. Capitol building – into the Senate chamber – with the requisite unlawful intent to obstruct.

Finally, the defendant's 1512 conviction does not exist in a vacuum. The defendant was separately convicted of six other criminal counts and sentenced to 12 months' imprisonment and six months' imprisonment, respectively, on each count. ECF No. 135. Even if his appeal of the conviction under Section 1512 were to raise a close question, nothing in the record suggests that either the Section 1512 conviction would be reversed or that any conviction for the remaining counts would require reversal or a new trial. Several judges, when faced with similar motions, noted this fact, finding that even if a defendant were successful in reversing a felony conviction, a reduced sentence would not be "less than the total of the time already served plus the expected duration of the appeal process." *United States v. Anthony Williams*, 21-cr-377-BAH, October 14, 2022 Minute Order denying Motion for Bond Pending Appeal (quoting 18 U.S.C. § 3143(b)(1)). In *United States v. Jared Cantrell*, Judge McFadden recently denied a similar motion, noting, at least with respect to the misdemeanor counts of conviction, none of the defendant's arguments raised a substantial question of law or fact. 22-cr-121-TNM, ECF No. 118 ("First, the disorderly and disruptive question is not a close call; joining a mob that had overtaken police and shut down proceedings in the United States Capitol is disorderly and disruptive."). *See also United States v. Brock*, No. 23-3045, 2023 WL 3671002 (D.C. Cir. May 5, 2023). In *Brock*, it was undisputed that the defendant, convicted for his conduct during the Capitol riot, was not likely to flee or pose a danger if released, and that his appeal was not for the purpose of delay. The Court assumed without deciding that Brock's appeal raised a substantial question of law regarding the scope of Section 1512(c), but denied his motion for release pending appeal because Brock did not show that a

favorable ruling was likely to lead to a reversal on all counts and he failed to show the likely amount of any reduced sentence for the remaining misdemeanors. The court of appeals decided further that Brock's only relief would have been release once he had served the amount of his likely reduced sentence had he shown what such a sentence would be. This defendant, similarly convicted under Section l512 and misdemeanors, has made no showing of what any "likely reduced" sentence would be, and has not shown why release is appropriate before he has served any likely reduced sentence.

This claim fails as well.

### D.    The "Rogue Juror Issue" is not a Close Call

The defendant devotes all of two sentences to this argument, claiming that this Court's denial of the Motion for a New Trial involves a substantial question of law. ECF No. 139-1, at 9. It does not.

As explained fulsomely in the Court's memorandum opinion, ECF No. 131 and 132, the Court appropriately found that the juror did not lie, withhold, or conceal information. ECF No. 131, at 9. The Court also found that the juror answered questions "directly and truthfully." *Id.* Even if the juror had disclosed his or her prior internship at the Capitol, "the Juror would not have been stricken for cause." *Id.* at 12. "There is no evidence that the Juror was a victim of the Capitol Riot such that she was biased, and even if she were a victim, the Court's careful questioning during voir dire was sufficient to dispel any risk that she would fulfill her role partially and without regard for the Court's legal instructions. *See Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961)." ECF No. 131, at 12. Outside of prior briefing, the defendant does not cite to a single case or argument that suggests that this Court abused its discretion in crediting the juror, or that the D.C. Circuit would consider this issue to be a substantial one or a close call for the purposes of a stay.

This claim likewise fails.

## IV.    Conclusion

The defendant's Motion does not raise substantial questions of law, and thus, his Motion

for Release Pending Appeal should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:    */s/ Gregory Rosen*
GREGORY ROSEN
Assistant United States Attorney
VA Bar No. 82584
U.S. Attorney's Office
District of Columbia
601 D Street N.W.
Washington, D.C. 20530
Gregory.rosen@usdoj.gov
(202) 252-6932

*/s/ Ashley Akers*
ASHLEY AKERS
Trial Attorney