UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 1:21-cr-708-RCL-1 |
| LEO CHRISTOPHER KELLY, | |
| *Defendant.* | |

MEMORANDUM ORDER

The defendant, Leo Christopher Kelly, asks the Court to reconsider its September 27, 2023, memorandum order denying his request for release pending appeal. Mem. Order, ECF No. 142. Mr. Kelly believes this Court should reconsider its earlier decision because the Supreme Court recently granted certiorari in *United States v. Fischer* to consider whether the D.C. Circuit erred in construing 18 U.S.C. § 1512(c) to include acts unrelated to congressional investigations and evidence. *Fischer v. United States*, No. 23-5572, 2023 WL 8605748 (Mem), at *1 (U.S. Dec. 13, 2023); Pet. for Cert., *Fischer v. United States*, No. 23-5572 (filed Sept. 11, 2023). Additionally, Mr. Kelly asks the Court to reduce his sentence pursuant to 18 U.S.C § 3582(c)(2), based on a recent amendment to the Sentencing Guidelines that provides an offense level reduction for certain offenders with zero criminal history points. U.S.S.G. § 4C1.1. The government opposes both requests. Upon consideration of the parties' briefing, the record, and the applicable law, the Court will **GRANT** Mr. Kelly's motion for reconsideration, **DENY** his motion for release pending appeal, and **DENY** his motion for a sentence reduction.

## I. BACKGROUND

The Court has previously summarized Mr. Kelly's conduct. *See United States v. Kelly*, No. 21-cr-708 (RCL), 2023 WL 5275154, at *8 (D.D.C. Aug. 16, 2023). The Court will assume

1

familiarity with Mr. Kelly's case and recount only those facts and procedural details necessary to resolve the motions now before it.

On May 9, 2023, a jury unanimously found Mr. Kelly guilty of several counts stemming from his participation in the Capitol Riot on January 6, 2021. *Id.* at *1. At trial the jury heard evidence that "Mr. Kelly pushed past lines of police officers, engaged in disruptive conduct on the Senate floor, and made various statements evincing his intent to stop the certification of President Biden as winner of the 2020 presidential election." *Id.* at *8. More specifically, the jury learned that:

> After [Mr. Kelly] entered onto restricted Capitol grounds, he personally observed tear gas, law enforcement perimeters, and rioters climbing scaffolding. [Mr. Kelly] saw another rioter violently bash in the window of the Parliamentarian's Door and [Mr. Kelly] entered the building shortly after as alarms blared overhead. [Mr. Kelly] personally observed violent property destruction, including another rioter bashing in an office door and rioters ransacking the Parliamentarian's Office. [Mr. Kelly] joined the crowd confronting a vastly outnumbered line of police officers as [Mr. Kelly] and others chanted "USA USA USA!" and "WHOSE HOUSE? OUR HOUSE!" [Mr. Kelly] reached the front of the mob and stood face-to-face with police officers who repeatedly directed the rioters to leave. Defying commands, [Mr. Kelly] brazenly pushed his body through the police line and charged forward with the flood of rioters behind him. [Mr. Kelly] moved upstairs to enter the Senate Floor, where only a small number of rioters made it on that day. [Mr. Kelly] walked straight to the dais where he rustled through official certification paperwork on the Vice President's desk and took videos of those documents. [Mr. Kelly] also took a photograph of the "threatening note" that fellow rioter Jacob Chansley left for the Vice President. [Mr. Kelly] filmed himself and other rioters as they shared a message that they were "send[ing] a message to all the tyrants, communists, and globalists that this is our nation and not theirs." [Mr. Kelly] then proceeded to take photos of documents on the desk of the Republican Party floor staff who were responsible for managing the Electoral College vote. [Mr. Kelly] only left the Senate Chamber after a group of law enforcement officers arrived.

Gov't Opp'n to Def.'s Mot. for Reconsideration 7–8 ("Gov't Opp'n"), ECF No. 144 (internal citations omitted); *see also* Gov't Opp'n to Def.'s Mot. for New Trial 14–18, ECF No. 122; Def.'s Reply to Gov't Opp'n 7 ("Def.'s Reply"), ECF No. 146.

The jury found Mr. Kelly guilty of obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2) (Count One), entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1) (Count Two), disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(2) (Count Three), entering and remaining on the floor of Congress in violation of 40 U.S.C. § 5104(e)(2)(A) (Count Four), entering and remaining in certain rooms in the Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(C) (Count Five), disorderly conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Six), and parading, demonstrating, or picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Seven).

On July 13, 2023, Mr. Kelly moved for new trial and judgment of acquittal. ECF No. 118. The Court denied that motion. *Kelly*, 2023 WL 5275154, at *9. On August 18, the Court sentenced Mr. Kelly to 30 months' incarceration and 12 months' supervised release on Count One, 12 months' incarceration and 12 months' supervised release on Counts Two and Three, and 6 months' incarceration on Counts Four, Five, Six, and Seven. J. 3–4, ECF No. 135. The Court set each term of incarceration and supervised release to run concurrently and ordered Mr. Kelly to pay a $190 special assessment, $5,000 fine, and $2,000 in restitution. *Id.* at 3–4, 8. On September 14, Mr. Kelly moved for release pending appeal under 18 U.S.C. § 3143(b)(1). ECF No. 139. The Court denied that request. Mem. Order. Mr. Kelly self-surrendered to the Bureau of Prisons on October 18 and began serving his term of incarceration. Def.'s Mot. 4, ECF No. 143.

On January 18, 2024, Mr. Kelly moved this Court to reconsider its order denying his motion for release pending appeal. *Id.* Mr. Kelly also requested a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) based on the addition, with retroactive effect, of U.S.S.G. § 4C1.1 to the

federal sentencing guidelines. *Id.* The government opposed, Gov't Opp'n, and Mr. Kelly replied, Def.'s Reply. These motions are now ripe for review.

## II. LEGAL STANDARDS

### A. Motion for Reconsideration

"The Federal Rules of Criminal Procedure do not address the legal standard applicable to motions to reconsider interlocutory decisions, but courts in this District have applied the 'as justice requires' standard under Federal Rule of Civil Procedure 54(b)." *United States v. Caldwell*, No. 21-cr-28 (APM), 2022 WL 203456, at *1 (D.D.C. Jan. 24, 2022) (first citing *United States v. Hassanshahi*, 145 F. Supp. 3d 75, 80 (D.D.C. 2015); and then citing *United States v. Hemingway*, 930 F. Supp. 2d 11, 12 (D.D.C. 2013)). "[A]sking 'what justice requires' amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). One basis for reconsideration is where a "a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (alteration in original) (internal quotation marks and citation omitted).

### B. Motion for Release Pending Appeal

18 U.S.C. § 3143(b)(1) states that the Court "shall order the release" of a person who has been "found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal" if it finds: "(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released[,]" and "(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in," as relevant here, "(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1). The burden of showing that both requirements are met lies with the defendant. *See United States v.*

*Perholtz*, 836 F.2d 554, 555–56 (D.C. Cir. 1987) (per curiam) (noting "the required showing on the part of the defendant" under 18 U.S.C. § 3143(b)).

**C. Motion for Sentence Reduction**

Courts may modify terms of imprisonment once they have been imposed when "a defendant . . . has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 944(o) . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

"On April 27, 2023, the [Sentencing] Commission submitted to Congress an amendment to the federal sentencing guidelines often referred to as 'Amendment 821' or the '2023 Criminal History Amendment.'" *Material Relating to the 2023 Criminal History Amendment*, United States Sentencing Commission, https://perma.cc/SQ9L-74Q2 (last visited Feb. 20, 2024). "Part B, Subpart 1 of Amendment 821 creates a new Chapter Four guideline at § 4C1.1 decreasing by two the offense levels for defendants who did not receive any criminal history points and whose instant offense did not involve specific aggravating factors," including that "the defendant did not use violence or credible threats of violence in connection with the offense." *U.S. Sentencing Commission Votes to Allow Retroactive Sentence Reductions and Announces Its Next Set of Policy Priorities*, United States Sentencing Commission (Aug. 24, 2023), https://perma.cc/7LJ7-G8DF; U.S.S.G. § 4C1.1(3). Amendment 821 became effective on November 1, 2023. It has retroactive effect pursuant to the policy statement at § 1B1.10. *See* U.S.S.G. § 1B1.10(d).

Courts follow a two-step approach when determining whether a sentence reduction is warranted under 18 U.S.C. § 3582(c)(2). *Dillon v. United States*, 560 U.S. 817, 826 (2010). First,

the court determines whether a defendant is eligible for a sentence reduction and to what extent. *Id.* at 827. The court must "'determin[e] the amended guideline range that would have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing." *Id.* (quoting U.S.S.G. § 1B1.10(b)(1)). If the defendant is eligible for a sentence reduction, the court moves on to step two, which is "to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part the under particular circumstances of the case." *Id.* "This understanding of § 3582(c)(2) [is] a narrow exception to the rule of finality." *Id.*

### III. DISCUSSION

There are two discrete motions before the Court: (1) Mr. Kelly's motion for reconsideration of this Court's September 27, 2023, ruling denying his motion for release pending appeal; and (2) Mr. Kelly's motion for a sentence reduction pursuant to 18 U.S.C § 3582(c)(2). The Court will consider each motion in turn.

**A. Mr. Kelly Is Not Entitled to Release Pending Appeal**

Mr. Kelly's motion for reconsideration is, in effect, a second request for release pending appeal. Because the Court denied his first request, he must, as a threshold matter, satisfy the Court that reconsideration is warranted. *See Hassanshahi*, 145 F. Supp. 3d at 80. Otherwise, the Court will stand by its prior ruling.

The Court is satisfied—and the government does not meaningfully contest—that reconsideration is warranted in light of the Supreme Court's decision to grant certiorari in *Fischer*. *See* Gov't Opp'n (arguing against release pending appeal, not reconsideration); *Fischer*, 2023 WL 8605748 (Mem), at *1 (granting certiorari). This Court denied Mr. Kelly's previous motion in part because it "depend[ed] on speculation that the Supreme Court will grant certiorari." Mem. Order 3.

6

Because that speculative possibility has come to pass, the Court finds a "significant change in the . . . facts since the submission of the issue to the Court" warranting reconsideration. *Singh*, 383 F. Supp. 2d at 101. Accordingly, Mr. Kelly's motion for reconsideration is **GRANTED** and the Court will consider anew his motion for release pending appeal.

To prevail on his motion for release pending appeal, Mr. Kelly must show that (1) he is not likely to flee or pose a danger to the safety of any other person or the community if released, (2) the appeal is not for the purpose of delay, (3) the appeal raises a substantial question of law or fact, and (4) he is likely to obtain a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. *See* 18 U.S.C. § 3143(b)(1); *Perholtz*, 836 F.2d at 555.

1.

The Court finds by clear and convincing evidence that Mr. Kelly is not likely to flee or pose a danger to the safety of the community. The Court would not have permitted Mr. Kelly to self-surrender unless he satisfied this requirement. *See* J. 3; *see also* 18 U.S.C. § 3143(a)(1) (requiring detention pending sentence unless the Court "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety" of others). The government does not contest this point and the Court takes it as conceded. *See* Gov't Opp'n 4–10.

2.

The Court finds that Mr. Kelly's appeal is not for the purpose of delay and raises a substantial question of law. Mr. Kelly intends to argue on appeal that his conduct on January 6 was not proscribed by 18 U.S.C. § 1512(c)(2). *See* Defs.' Mot. 6. The Supreme Court recently granted certiorari to consider the scope of § 1512(c)(2) and whether it applies to conduct like the defendant's. *Fischer*, 2023 WL 8605748 (Mem), at *1; Pet. for Cert., *Fischer*. A substantial question within the meaning of § 3143(b) is a "close question or one that very well could be

decided the other way." *Perholtz*, 836 F.2d at 555 (internal quotation marks omitted). "The question of whether [the] Defendant's admitted conduct violates § 1512(c)(2) meets this standard." *United States v. Adams*, No. 21-cr-354 (APM), 2024 WL 111802, at *2 (D.D.C. Jan. 10, 2024). Although the Supreme Court may have granted certiorari merely to clarify the Fischer majority's "fractured" holding, *see United States v. Carrell*, No. 23-cr-139 (BAH), ECF No. 75 at 4 (D.D.C. Jan. 4, 2024), the Court's decision indicates that the defendant raises at least a "close question," *see United States v. Munchel*, No. 21-cr-118 (RCL), ECF No. 264 at 4 (D.D.C. Jan. 25, 2024); *Adams*, 2024 WL 111802, at *2.

**3.**

All that remains is whether Mr. Kelly is likely to obtain "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process" if he prevails on appeal. 18 U.S.C. § 3143(b)(1)(B)(iv). The Court finds that he is not. As a result, his motion for release pending appeal is **DENIED**.

Mr. Kelly was convicted of one felony and six misdemeanor counts. That felony count is at risk if the Supreme Court reveres *Fischer* and cabins 18 U.S.C. § 1512(c)(2). Assuming his § 1512(c)(2) count drops away, Mr. Kelly will still be guilty of two class A misdemeanors, including entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1), and disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(2), and four class B misdemeanors, including entering and remaining on the floor of Congress in violation of 40 U.S.C. § 5104(e)(2)(A), entering and remaining in certain rooms in the Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(C), disorderly conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D), and parading, demonstrating, or picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). *See* 18 U.S.C. § 3559.

Although Mr. Kelly suggests that the guideline range applicable on resentencing if his § 1512(c)(2) conviction is vacated would be 0-6 months, he apparently expects the Court to impose a term of incarceration closer to two months. *See* Def.'s Mot. 7–8. Mr. Kelly has already served approximately 4 months. *See id.* at 4 (noting self-surrender on October 18, 2023).

"The current median time interval from the filing of a notice of appeal to disposition in the D.C. Circuit is 11.3 months." *Id.* at 9 & n.2. Mr. Kelly filed his notice of appeal on August 25, 2023, so the Court will assume that his appeal will be completed by approximately August 2, 2024. ECF No. 137. Mr. Kelly self-surrendered on October 18, 2023. Def.'s Mot. 4. Accordingly, he will have served a maximum of roughly 9.5 months—the interval between October 18, 2023 and August 2, 2024—before the expected end of the appeal process. The question the Court must decide is whether the sentence Mr. Kelly is likely to obtain if he prevails on appeal is less than the 9.5 months he will have served if he is incarcerated through the beginning of August 2024. *See Munchel*, ECF No. 264 at 5–6 (applying the same logic); *Adams*, 2024 WL 111802, at *2 (same).

The Court concludes that Mr. Kelly is not likely to receive a sentence to a term of less than 9.5 months' incarceration.[1] Although the guidelines range at sentencing—24 to 30 months—is significantly higher than the 12 month statutory maximum for Mr. Kelly's class A misdemeanors, the Court imposed a sentence at the high-end of the guidelines (30 months) because it reflected the seriousness of Mr. Kelly's conduct. Sentencing Tr. 23:11–17, ECF No. 145. The Court cannot predict how it would resolve any dispute between the parties concerning the applicable guidelines range or the propriety of imposing consecutive sentences, but it is highly unlikely that the Court

---

[1] It is not a comfortable position for the Court to pontificate on the outcome of a hypothesized resentencing without the benefit of a full resentencing hearing. But that is what the law requires, *see* 18 U.S.C. § 3143(b)(1)(B)(iv), and it is Mr. Kelly's motion that has placed the Court in this posture. The Court's mind is not fixed, however, as the following analysis reflects only the Court's preliminary assessment of what it is likely to do and is not determinative of what the Court will in fact do should Mr. Kelly be entitled to resentencing. The Court remains open to Mr. Kelly's arguments and allocution.

would reduce the 30-month sentence it imposed to less than 9.5 months. The Court is much likelier to impose a sentence of at least 12 months, and perhaps greater if the Court decides to impose any sentences consecutively. The Court is likely to impose such a sentence even if it requires an upward variance from the guidelines.

Indeed, Mr. Kelly's conduct was more harmful and egregious than the typical case represented by the guidelines range generated for defendants with only class A and class B misdemeanors stemming from the Capitol Riot. *See United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018). Mr. Kelly physically confronted a police officer and led rioters past a line of officers. Gov't Opp'n 8. Once in the Senate Chamber, Mr. Kelly rustled through certification paperwork, including paperwork belonging to the Vice President, and took photographs and videos of sensitive certification-related materials. *Id.* Mr. Kelly photographed a threatening note left for Vice President Pence by Jacob Chansley and filmed himself making an impromptu speech at the Senate dais which communicated his intent to obstruct Congress from certifying the 2020 presidential election. *Id.* Moreover, Mr. Kelly demonstrated at sentencing that he still does not appreciate the seriousness of his conduct. Sentencing Tr. 22:1–3. The Court has already noted this case's similarities to *United States v. Chansley*, No. 21-cr-3 (RCL). Sentencing Tr. 22:21–23:7. That case provides the appropriate reference for Mr. Kelly's conduct, not the class B misdemeanor and petty offense cases cited in Mr. Kelly's motion. *See* Def.'s Mot. 7–8.

Mr. Kelly also cites *Adams* and *United States v. Sheppard*, No. 21-cr-203 (JDB)—neither of which were decided by this Court—to suggest that an upward variance would be unwarranted because those defendants were equally as culpable as Mr. Kelly, yet those courts determined that they were unlikely to resentence them outside the guidelines. Def.'s Reply 5. But the claim of equal culpability is belied by the facts. Mr. Kelly, unlike the defendant in *Sheppard*, the facts of

10

which Mr. Kelly quotes at length, did not merely chant slogans and videotape riotous conduct. *See* Def.'s Reply 5 (quoting *Sheppard*, ECF No. 142 at 7 (D.D.C. Jan. 11, 2024)). He led the mob past a police line, entered the Senate Chamber, interfered with and recorded sensitive certification-related documents, and engaged in an impromptu speech which amply demonstrated his purpose that day—to bring the government to a halt—and in fact prolonged the certification delay by continuing the rioters' occupation of the Senate Chamber. Gov't Opp'n 8. That conduct is worse than Mr. Sheppard's.

At bottom, even if Mr. Kelly is not ultimately guilty of 18 U.S.C. § 1512(c)(2) as a consequence of the Supreme Court rendering a defendant-favoring decision in *Fischer*, it is evident that his conduct was intended to obstruct government business including the constitutionally mandated transfer of power. The court's sentence must reflect the seriousness of his specific conduct and the need for general and specific deterrence. 18 U.S.C. 3553(a)(2). It is highly unlikely that a sentence of less than 9.5 months, let alone 2 months, would be sufficient to effectuate those purposes. The Court will consider an upward variance from the revised guidelines range if needed to effectuate the purposes of punishment set forth in the § 3553(a) factors.

**B. The Court Will Not Reduce Mr. Kelly's Sentence**

Mr. Kelly's motion for a sentence reduction requires the Court to answer two questions: (1) whether he is eligible for a sentence reduction under the new U.S.S.G. § 4C1.1; and (2) if so, whether a reduction is warranted after considering the applicable 18 U.S.C. § 3553(a) factors under the particular circumstances of this case. The Court finds that Mr. Kelly fails at both steps. Consequently, his motion for a sentence reduction is **DENIED**.

*First*, to qualify for a two-level reduction under § 4C1.1, a defendant must have zero criminal history points and not fall under any of several enumerated exclusions. U.S.S.G. § 4C1.1.

11

One such exclusion is for defendants who "use[d] violence or credible threats of violence in connection with the offense." *Id.* § 4C1.1(3). If a defendant used violence or credible threats of violence in connection with the offense of conviction, they are ineligible for the two-level reduction. At issue here is the applicability of that exclusion to Mr. Kelly.

"Offense" for § 4C1.1 purposes "means the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." *Id.* § 1B1.1 cmt. n.1(I); *see id.* § 4C1.1(b)(1). Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, produced, or willfully caused by the defendant," as well as certain acts and omissions of others committed as part of "a jointly undertaken criminal activity." *Id.* § 1B1.3(a)(1). § 4C1.1 and other guidelines provisions that use these terms do not define "violence" or "credible threats of violence." *United States v. Yang*, No. 23-cr-100 (JDB), 2024 WL 519962, at *3 (D.D.C. Feb. 9, 2024); *United States v. Bauer*, No. 21-cr-386-2 (TNM), 2024 WL 324234, at *2 (D.D.C. Jan. 29, 2024). As a result, this Court, like others to consider § 4C1.1, will look to the plain meaning of these terms as evidenced by dictionary definitions contemporary with the provision's enactment. *See Yang*, 2024 WL 519962, at *4; *Bauer*, 2024 WL 324234, at *2.

Black's Law defines "violence" as "[t]he use of physical force, usu[ally] accompanied by fury, vehemence, or outrage; esp[ecially], physical force unlawfully exercised with the intent to harm." *Violence*, Black's Law Dictionary (11th ed. 2019); *see also Violence*, Oxford English Dictionary (2014) (defining "violence" as the "deliberate exercise of physical force against a person"); *Yang*, 2024 WL 519962, at *4 (looking to Merriam-Webster Online); *Bauer*, 2024 WL 324234, at *2 (looking to Webster's Third New International Dictionary). A "credible" threat of violence is one that "offer[s] reasonable grounds for being believed or trusted." *Credible*, Merriam-

12

Webster, https://perma.cc/TYM4-KE3B (last visited Feb. 21, 2024); *see also Yang*, 2024 WL 519962, at *4 (same); *Bauer*, 2024 WL 324234, at *3 ("[A] 'credible threat of violence' is a believable expression of an intention to use physical force to inflict harm."). Courts will look to "contextual evidence" to determine whether a threat is credible. *United States v. Johnson*, 64 F.4th 1348, 1352 (D.C. Cir. 2023).

The Court finds that Mr. Kelly used violence within the meaning of § 4C1.1(3). Mr. Kelly, while at the vanguard of an angry and agitated crowd of rioters, tried to push past a line of officers. Gov't Opp'n 8. After one of the officers used his body to prevent Mr. Kelly from advancing, Mr. Kelly raised his arm, placed his finger on the officer's chest, engaged in "a few . . . seconds of tussling and physical contact" with the officer before being pushed back, and then side-stepped past the officer after he became distracted by another rioter. *Id.* at 13; *see also* Def.'s Reply 7. In other words, Mr. Kelly deliberately used physical force against the body of a police officer. Importantly, he used this force in an attempt to overcome the officer's resistance to granting him access to the inner recesses of the Capitol. That Mr. Kelly's use of force was accompanied by "fury, vehemence, or outrage" is evident from context since Mr. Kelly placed himself at the front of a riotous mob and decided to make physical contact with the officer only after the officer prevented him from breaking through the police line. *Violence*, Black's Law Dictionary (11th ed. 2019). Moreover, Mr. Kelly's actions were decidedly confrontational. *Cf. Yang*, 2024 WL 519962, at *4 (declining to characterize physical conduct as violent because the defendant's body language was "overtly nonconfrontational"). And he did not passively react to the officer; Mr. Kelly was intent on getting past him and affirmatively used physical means to achieve that goal. *See Bauer*, 2024 WL 324234, at *3 (distinguishing an "immediate reaction" from an "aggressive confrontation").

Contrary to defendant's argument, a finding that Mr. Kelly used "violence" does not, strictly speaking, require "indicia of an intent to harm or injure the officer," nor does it require "evidence of the conversational content" with the officer. Def.'s Reply 7. It suffices that Mr. Kelly used physical force against an officer while at the vanguard of an angry and aggressive crowd in order to overcome the officer's resistance to his (and the crowd's) obstructive goal of reaching further inside the Capitol. *See Yang*, 2024 WL 519962, at *4 (focusing on the "degree of aggressiveness" associated with the defendant's individual conduct). Had Mr. Kelly placed his finger on the officer's chest to protect himself from falling forward after being pushed by a surging crowd, the Court would have reached a different result. *See Yang*, 2024 WL 519962, at *4. Instead, he placed his finger on the officer's chest to overcome the officer's resistance to letting him pass. When placed in its proper context, Mr. Kelly's conduct involved the use of violence, and he is not eligible for an offense-level reduction under § 4C1.1.

*Second*, even if Mr. Kelly were eligible for a two-level reduction under the new U.S.S.G. § 4C1.1, the Court, in its discretion, would still decline to decrease his sentence because the 30-month sentence it imposed was carefully calibrated by the Court to reflect his specific conduct. *See Dillion*, 560 U.S. at 827. The Court has already discussed the special seriousness of Mr. Kelly's actions on January 6. *See* discussion *supra*, III.A.3. Indeed, if the guidelines range applicable at sentencing had been lower—e.g., the 18-24 month range that Mr. Kelly alleges would have applied had Amendment 821 already been in effect—the Court likely would have varied upwards to impose a higher sentence because only a higher sentence would have sufficed to effectuate the purposes of punishment set forth in the 18 U.S.C. § 3553(a) factors. Def.'s Mot. 10. Accordingly, the Court is well within its discretion to decline to revisit or modify that sentence now, even assuming Mr. Kelly were entitled to a two-level reduction under the zero-point offender guideline.

14

## IV.   CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that Mr. Kelly's motion [143] for reconsideration is **GRANTED**.

It is further **ORDERED** that Mr. Kelly's motion [143] for release pending appeal is **DENIED**.

It is further **ORDERED** that Mr. Kelly's motion [143] for sentence reduction as a zero-point offender is **DENIED**.

**IT IS SO ORDERED.**

Date: February 23, 2024

Royce C. Lamberth
United States District Judge

15