UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) <br> ) <br> ) |
| v. | ) Case No. 1:21-cr-708-RCL <br> ) |
| LEO KELLY, | ) <br> ) |
| Defendant. | ) <br> ) |

**LEO KELLY'S RENEWED MOTION FOR BAIL PENDING APPEAL**

Leo Kelly, by counsel, respectfully renews his motion for release pending appeal, pursuant to 18 U.S.C. §§ 3141(b) and 3143(b) and Fed. R. Crim. P. 46(c) & 38(b)(1). Kelly previously moved the Court for such relief in January. ECF No. 143. In denying Kelly's motion the Court held that while the defendant's appeal presented a "substantial question," vacatur of Kelly's § 1512(c)(2) conviction would likely yield a prison term between 9.5 to 12 months' incarceration at resentencing, which Kelly had yet to serve at that point. 2/24/24 Order, ECF No. 147, p. 9. In light of the Supreme Court's decision in *Fischer v. United States*, 603 U.S. __ (2024), which will entail additional appellate litigation delaying Kelly's appeal, Kelly moves the Court for an order releasing him on August 2 but in no event later than October 18.

**Background**

Between May 3 and 9, 2023, the Court conducted a jury trial. The Court will recall that Kelly traveled from Iowa to D.C. with his parents to attend the former president's rally. ECF No. 128, p. 1. After following the crowd to the Capitol, he entered the building at 2:43 p.m. and remained inside for a total of 26 minutes. *Id.*, p. 2. Approximately five of those minutes were

1

spent on the Senate floor, where he prayed, walked around and took photos. Evidence showed that Kelly stopped a rioter in the building from damaging property. *Id.* After January 6, Kelly sought out the FBI so he could turn himself in and fully cooperated. He committed no violent acts and no evidence showed him attempting to prevent members of Congress or law enforcement from performing their duties that day, beyond the basic fact of his presence. *Id.*

Kelly was found guilty of the following charges: Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count One); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); Entering and Remaining on the Floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A) (Count Four); Entering and Remaining in Certain Rooms in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(C) (Count Five); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Six); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Seven).

On August 18, 2023, the Court sentenced Kelly. Kelly submitted a large number of letters in support. A central theme was the significant value Kelly contributed to his community in Iowa. Sentencing Tr., p. 16. Kelly had zero criminal history points. PSR, ¶ 48.

As the most serious offense, Kelly's § 1512(c)(2) conviction determined that the controlling Guideline would be U.S.S.G. §2J1.2 ("Obstruction of Justice"), with a base offense level of 14. The Court applied the specific offense characteristic at §2J1.2(b)(2) for substantial interference with "the administration of justice." That rendered a Guidelines range of 24 to 30 months' incarceration. Sentencing Tr., p. 3. The Court sentenced Kelly to 30 months'

incarceration on the § 1512(c)(2) conviction. *Id.*, p. 23.

In turn, the Court's determination meant that, under the Guidelines, the Court was directed to impose the "total punishment" of 30 months' incarceration on every remaining count of conviction, to the extent permitted by applicable statutory maxima. U.S.S.G. § 5G1.2(b). For that reason, the Court imposed concurrent sentences of 12 months' incarceration on Counts Two and Three and of six months' incarceration on Counts Four through Seven, the statutory maxima for all those misdemeanor counts.

Kelly surrendered to the Bureau of Prisons on October 18, 2023.

In denying Kelly's bail-pending-appeal motion in January, the Court found by clear and convincing evidence that Kelly was not likely to flee or pose a danger to the safety of the community. ECF No. 147, p. 7 (citing 18 U.S.C. § 3143(b)(1)(A)). It also found that Kelly's appeal raised a substantial question of law, i.e., whether § 1512(c)(2) requires the government to prove that the defendant committed an actus reus intended to affect the integrity or availability of evidence used in an official proceeding. *Id.* However, it denied Kelly's motion because it found that Kelly was not likely to obtain "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." *Id.*, p. 8 (citing 18 U.S.C. § 3143(b)(1)(B)(iv)). Specifically, the Court "assume[d] that [Kelly's] appeal will be completed by approximately August 2, 2024." *Id.*, p. 9. Next, the Court found that if Kelly's § 1512(c)(2) were vacated, he would likely be resentenced to a term of incarceration between 9.5 and 12 months. *Id.*, pp. 9-10. At the time, Kelly had not served 9.5 months of incarceration.

On June 28, the Supreme Court in a 6-3 decision held the following: "[S]ubsection (c)(2) [of Section 1512] was designed by Congress to capture other forms of evidence and other means of impairing its integrity or availability beyond those Congress specified in (c)(1)." *Fischer v.*

3

*United States*, 603 U.S. __ (2024).  Thus, subsection (c)(2) criminalizes impairment of all the categories of evidence not referenced in (c)(1), "such as witness testimony or intangible information." *Id.*  It does not criminalize all acts that obstruct an official proceeding, including those with no relationship to evidence.

**Argument**

**I.     Standard for release pending appeal**

A court "shall order the release" of an individual pending appeal if it finds:

  (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ; and

  (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
   (i)     reversal,
   (ii)    an order for a new trial,
   (iii)   a sentence that does not include a term of imprisonment, or
   (iv)   a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1); *see also United States v. Perholtz*, 836 F.2d 554, 557 (D.C. Cir. 1987).  "[I]n in the circumstance described in subparagraph (B)(iv) . . . the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." § 3143(b)(1).

**II.    Kelly's release pending appeal is appropriate under § 3143(b)(1)**

   **A.    Kelly poses no flight or safety risk**

The Court has already determined that Kelly is not likely to flee or pose a danger to the safety of the community.  ECF No. 147, p. 7 (citing 18 U.S.C. § 3143(b)(1)(A)).

From January 16, 2021 until the day he reported to prison in October 2023, Kelly was released on conditions and a personal recognizance bond.  Thus, for over two years, Kelly fully demonstrated his compliance with all pretrial release conditions.  Indeed, the government

did not even seek pretrial detention in Kelly's case.   Moreover, Kelly was not accused of violence, has no criminal history, and has strong community ties.

> **B.    Resolution of this substantial question in Kelly's favor will likely result in a reduced imprisonment sentence that would expire before the appeal concludes**

A "substantial question" within the meaning of § 3143(b) is "'a close question or one that very well could be decided the other way.'" *Perholtz*, 836 F.2d at 555 (quoting *United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985)).  This standard does not require the Court to find that Kelly's appeal establishes a likelihood of reversal.  *See Bayko*, 774 F.2d at 522-23.  Rather, the Court must "evaluate the difficulty of the question" on appeal, and grant release pending appeal if it determines that the question is a close one or one that "'very well could be'" decided in the defendant's favor.  *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir.1985)).

Here, even before the Supreme Court's *Fischer* decision, this Court had determined that a number of Capitol riot defendants convicted under § 1512(c)(2), including Kelly, had satisfied the substantial question standard for release pending appeal.  *E.g.*, *United States* v. *Adams*, 21-cr-354-APM, ECF No. 85; *United States v. Sheppard*, 21-cr-302-JDB, ECF No. 142; *United States v. Weyer*, 22-cr-40-JEB, ECF No. 71.

A fortiori, then, Kelly's appeal satisfies § 3143(b) after vacatur of the D.C. Circuit's decision in *Fischer*.  No evidence at trial established that Kelly intended to or did impair the integrity or availability of evidence used in an official proceeding.  "Evidence" is "something (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact." Black's Law Dictionary 576 (7th ed. 1999).  On January 6, Congress was not weighing evidence, though the legislature does weigh evidence when

exercising its power of inquiry on other occasions (e.g., when it issues subpoenas and takes witness testimony, as in the Iran-Contra congressional investigation or the Select Committee to Investigate the January 6th Attack).  In any case, the government never presented to the grand jury the claim that Kelly impaired evidence, as indicated by the government's argument pre-*Fischer* that Kelly's crime lay in the fact that he obstructed the official proceeding "directly" (i.e., through his presence).  U.S. Const. amend. V.  Even if the Court were to deem (for example) electoral certificates "evidence," (1) this would constitute tangible "object" evidence which would fall within subsection (c)(1), with which Kelly was not charged or convicted, *Fischer*, No. 23-5572, 2024 U.S. LEXIS 2880, at *17; and (2) even if Kelly had been charged under subsection (c)(1) for this theory, no trial evidence established that he intended and attempted to impair the integrity or availability of electoral certificates on January 6 (or any other "evidence").

        Of course, even if the Court were to identify some potential counterarguments to these points, release under section 3143(b) does not require a finding that Kelly's § 1512(c)(2) conviction will likely be reversed.  Kelly must only establish that the question is close or could well be decided in his favor.  *Shoffner*, 791 F.2d at 589.  Given that even under the best interpretation of *Fischer* for the government (i.e., the interpretation put on the majority's opinion by a nondeterminative sixth vote in a concurring opinion joined by no other justice) Kelly would still have been indicted under the wrong subsection of 1512, it is hard to see how he has not easily satisfied § 3143(b).

        Kelly's appeal is being held in abeyance pending the return of the mandate in *Fischer*.  Thus, the Circuit has not even set a briefing schedule.  A long backlog of January 6 cases is occupying the Circuit's docket.  In addition, because the *Fischer* Court remanded a question for

resolution by the Circuit, it will be likely be at least a month before Kelly's appeal *commences*. The Circuit may then take over 6 months to resolve his appeal.

Taken together, then, Kelly has established that he will likely receive "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." § 3143(b)(1)(B)(iv).  Specifically, Kelly should be released on August 2.  ECF No. 147, p. 9.  But even if the Court declines to release Kelly on that date, it should enter an order directing that he should be released on a date no later than October 18, the one-year anniversary of his surrender to the BOP.  *Id.*, p. 10.  It is beyond peradventure that the appeal process in his case will not have concluded by that point.

Kelly is grateful for the Court's consideration of this motion.

Dated: July 9, 2024                              Respectfully submitted,

                                                 */s/ Nicholas D. Smith*
                                                 Nicholas D. Smith (D.C. Bar No. 1029802)
                                                 1123 Broadway, Suite 909
                                                 New York, NY 10010 Phone:
                                                 (917) 902-3869
                                                 nds@davidbsmithpllc.com

                                                 *Attorney for Leo Kelly*

**Certificate of Service**

I hereby certify that on the 9th day of July, 2024, I filed the foregoing submission with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s): Counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

                                                 */s/ Nicholas D. Smith*

7