**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**LEO CHRISTOPHER KELLY,**<br><br>Defendant. | **Case No. 21-cr-708 (RCL)** |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum for resentencing in connection with the above-captioned matter.

On May 9, 2023, a jury convicted Kelly of seven counts, including a felony violation of 18 U.S.C. § 1512(c)(2) and six misdemeanor violations for his conduct at the Capitol complex on January 6. On August 18, 2023, this Court sentenced the defendant to 30 months of incarceration. ECF No. 135. When it sentenced Kelly, this Court made clear its view that his conduct represented a "serious crime." Sentencing Tr. at 22 (8/18/23). As a result of Kelly's and others' conduct on January 6, it "brought the government to a screeching halt . . . actually obstructing the government from being able to go forward with its function, and it brought the whole government to a halt." *Id.*

The Supreme Court's decision in *Fischer* v. *United States* narrowed the application of 18 U.S.C. § 1512(c)(2) (144 S. Ct. 2176 (2024)), and as a result, the government now moves to vacate Kelly's felony 1512(c)(2) conviction and proceed to resentencing on the remaining six misdemeanors. The Defendant's conduct is unchanged, and the analysis of the 3553(a) factors remains unchanged. As established at trial, Kelly was part of the mob of rioters that participated

1

in the initial breach of the Parliamentarian Door. Kelly surged past several lines of police officers, and marched directly to the Senate Chamber, where moments earlier the Congressional certification had been taking place. As such, Kelly played an outsized role in the attack on the Capitol on January 6, 2021—one that warrants a significant sentence above the newly-calculated guidelines range.

For these and the other reasons described herein, this Court should impose the same sentence on this "serious crime"—the government respectfully requests that this Court resentence Leo Christopher Kelly to 30 months' imprisonment, 36 months of supervised release, $2,000 in restitution, and a mandatory $90 special assessment (consisting of the mandatory assessments of $25 for each Class A misdemeanor conviction (Counts Two and Three) and $10 for each Class B misdemeanor conviction (Counts Four, Five, Six, and Seven)). The requested 30-month prison sentence represents an upward variance from the advisory amended guideline range of 6 to 12 months but reflects the careful based on the defendant's conduct and this Court's prior findings, as originally imposed.

## I. FACTUAL BACKGROUND

The government incorporates the factual background from its previously filed Sentencing Memorandum, ECF No. 129.

## II. THE CHARGES, TRIAL, AND POST-SENTENCING LITIGATION

On December 3, 2021, a federal grand jury returned an indictment charging Kelly with seven counts: (1) Obstruction of an Official Proceeding and Aiding and Abetting, 18 U.S.C. §§ 1512(c)(2) and 2; (2) Entering and Remaining in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(1); (3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, 18 U.S.C.

2

§ 1752(a)(2); (4) Entering and Remaining on the Floor of Congress, 40 U.S.C. § 5104(e)(2)(A); (5) Entering and Remaining in Certain Rooms in the Capitol Building, 40 U.S.C. § 5104(e)(2)(C); (6) Disorderly Conduct in a Capitol Building, 40 U.S.C. § 5104(e)(2)(D); and (7) Parading, Demonstrating, or Picketing in a Capitol Building, 40 U.S.C. § 5104(e)(2)(G). ECF No. 27.

On May 9, 2023, a jury convicted Kelly of all seven counts. At trial, the Court properly applied the elements to Count One, Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2), which had been affirmed in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). However, after sentencing in this case, on June 28, 2024, the Supreme Court issued its opinion in *Fischer v. United States*. *Fischer*, 144 S. Ct. 2176 (2024).

At the status conference held on September 26, 2024, the government stated its intention to move to dismiss Kelly's conviction under Count One. We now do so formally.

## III.   STATUTORY PENALTIES

Kelly now faces sentencing on the six remaining counts of the Indictment. As previously noted by the Presentence Report issued by the U.S. Probation Office, ECF No. 126, Kelly faces the following penalties:

- Count Two (Entering and Remaining on a Restricted Building of Grounds): up to one year imprisonment, a term of supervised release of not more than one year, a fine up to $100,000, and a mandatory special assessment of $25.

- Count Three (Disorderly and Disruptive Conduct in a Restricted Building or Grounds): up to one year imprisonment, a term of supervised release of not more than one year, a fine up to $100,000, and a mandatory special assessment of $25.

- Count Four (Entering and remaining on the Floor of Congress): up to six months

3

imprisonment, a fine up to $5,000, and a mandatory special assessment of $10.

- Count Five (Entering and Remaining in Certain Rooms in the Capitol Building): up to six months imprisonment, a fine up to $5,000, and a mandatory special assessment of $10.

- Count Six (Disorderly Conduct in a Capitol Building): up to six months imprisonment, a fine up to $5,000, and a mandatory special assessment of $10.

- Count Seven (Parading, Demonstrating, or Picketing in a Capitol Building): up to six months imprisonment, a fine up to $5,000, and a mandatory special assessment of $10.

## IV. THE UPDATED SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

The government provides the following amended sentencing calculations for the remaining counts:

Count Two: 18 U.S.C. § 1752(a)(1)

| | | |
|---|---|---|
| U.S.S.G. § 2B2.3(a) | Base Offense Level | 4 |
| U.S.S.G. § 2B2.3(b)(1)(A)(vii) | Special Offense Characteristic (Restricted Building or Grounds) | +2 |
| | **Total** | **6** |

Count Three: 18 U.S.C. § 1752(a)(2)

| | | |
|---|---|---|
| U.S.S.G. § 2A2.4(a) | Base Offense Level | 10 |
| | **Total** | **10** |

Counts Four, Five, Six, and Seven:   Class B misdemeanors to which the Sentencing Guidelines do not apply. *See* 40 U.S.C. § 5109(b); 18 U.S.C. § 3559(a)(7); U.S.S.G. § 1B1.9.

**Total Adjusted Offense Level:**                                                                           **10**

Under U.S.S.G. §3D1.2(a) and (c), "closely related counts" group. Counts Two and Three comprise a single group under U.S.S.G. §3D1.2(a) and (b) because the victim of each count is Congress. Under U.S.S.G. §3D1.3(a), the offense level for a group of closely related counts is the

4

highest offense level of the counts in each group. The highest offense level is 10 (for Count Three). Therefore, the combined offense level for the group is 10.

The U.S. Probation Office previously calculated Kelly's criminal history as category I, which is not disputed and has not changed since the previous sentencing hearing. PSR ¶ 48. Accordingly, based on the government's calculation of the total adjusted offense level, at 10, Kelly's Guidelines imprisonment range is 6 to 12 months' imprisonment.

## V.   THE SERIOUSNESS OF THE CRIMES – DEPARTURES AND VARIANCES

After determining Kelly's Guidelines range, a court then considers any departures or variances. *See* U.S.S.G. § 1B1.1(a)-(c). Because Kelly's Guidelines range does not capture the unprecedented and uniquely harmful nature of his crimes, which struck at the heart of our democracy and the rule of law, the government respectfully requests that the Court depart or vary upwards from the top of the Guidelines range.

Following *Fischer*, the government has now moved to vacate Kelly's conviction under Count One, but that vacatur does not eliminate the severity of his crimes or their potential impact on the rule of law. As this Court has explained, "political violence rots republics." Notes for Sentencing, *United States v. Taylor Johnatakis*, 21-CR-91 (RCL), ECF No. 272 at 5. Indeed, nothing in the *Fischer* opinion prevents this Court from considering how the uniquely corrosive and calculated events of January 6 factor into an appropriate sentence. Kelly joined a mob that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, injured more than one hundred police officers and resulted in more than 2.9 million dollars in losses. His offense targeted the peaceful transfer of power, an essential government function, and one of the fundamental and foundational principles of our democracy.

5

Like every member of the mob, Kelly "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024). As Judge McFadden put it to another rioter, "[Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources." *United States v. Hale-Cusanelli*, 21-CR-37 (TNM), Sent'g Tr. 9/22/22 at 86-87.

But nothing in Kelly's Guidelines calculation at this resentencing reflects these facts. The defendant would face the same offense level if his crimes had not endangered the democratic process or interfered with the peaceful transfer of power.[1] There is no specific offense characteristic in the Guidelines for attacking democracy or abandoning the rule of law. "And simply saying, yeah, I know I trespassed, I trespassed, that's not really capturing the impact of what that day meant when all of those members of Congress met there to fulfill their constitutional duty." *United States v. Calhoun*, 21-CR-116 (DLF), Sent. Tr. at 85. So a sentence within Kelly's Guidelines range here would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

The Guidelines expressly state that an upward departure is warranted where a case presents a circumstance that "may not have been adequately taken into consideration in determining the

---

[1] The D.C. Circuit's holding in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024), finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And the Supreme Court's recent decision in *United States v. Fischer*, 144 S. Ct. 2176 (2024) demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, slip op. at 29 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

6

applicable guideline range" or that "the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence." U.S.S.G. § 5K2.0(a)(2). The Guidelines also provide that a departure is warranted when an offense results in "a significant disruption of a governmental function" and the Guidelines do not reflect the appropriate punishment for the offense. U.S.S.G. § 5K2.7.[2] In such circumstances, "the court may increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected."

It is not hyperbole to call what happened on January 6 a crime of historic magnitude. As judges of this district have repeatedly and clearly stated, January 6 was an unprecedented disruption of the nation's most sacred function—conducing the peaceful transfer of power. "The events that occurred at the Capitol on January 6th will be in the history books that our children read, our children's children read and their children's children read. It's part of the history of this nation, and it's a stain on the history of this nation." *United States v. Miller*, 21-CR-75 (RDM), Sent. Tr., at 67. But just as the history books will describe the crimes of January 6, so will they tell the story of how this nation responded. Future generations will rightly ask what this generation did to prevent another such attack from occurring. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as just another crime. *See Johnatakis*, Notes for Sentencing (ECF No. 272) at 5 ("Violence risks begetting a vicious cycle that could threaten cherished conventions and imperil our very institutions of government. . . . January 6 must not become a precedent for further violence against

---

[2] This guideline does not require the government to establish a direct link between the defendant's misconduct and the alleged disruption, nor does it "require that the disruption be of any particular type or consequence." *See United States v. Saani*, 650 F.3d 761, 765–66, 771 (D.C. Cir. 2011).

7

political opponents or governmental institutions."); *United States v. Wyatt*, 23-CR-215 (RDM), Sent. Tr. at 44 ("He just wanted to delay the certification. He wanted the election certification stopped. That's chilling to me. I mean, that is not a minor thing, in that through -- through acts of violence and intimidation, we're going to stop the most sacred day in our democracy from occurring, which is the certification of the election, because we want some more time to try and make our case because the dozens and dozens of courts that have considered the issue and have concluded there was not a problem with the election weren't enough, and because I want someone else to take another look at this. And so, therefore, I'm going to go down to the Capitol and I'm going to stop the certification of the election from occurring. So I think that the offense here, to my mind, is one of enormous gravity.").

Indeed, even before *Fischer*, judges of this Court gave significant upward departures and/or variances in January 6 cases when they found the advisory guideline range inadequate. *See, e.g.*, *United States v. Hale-Cusanelli*, 21-CR-37 (TNM), 9/22/22 Sent. Tr.; *United States v. Christian Secor*, 21-CR-157 (TNM), 10/19/22 Sent. Tr.; *United States v. Hunter and Kevin Seefried*, 21-CR-287 (TNM). 10/24/22 Sent. Tr.; *United States v. William Watson*, 21-CR-513 (RBW), 3/9/23 Sent. Tr.; *United States v. Riley Williams*, 21-CR-618 (ABJ), 3/23/23 Sent. Tr.; *United States v. Hatchet Speed*, 22-CR-244 (TNM), 5/8/23 Sent. Tr.

And several judges of this Court have departed upward in January 6 cases precisely because in a post-*Fischer* world, the advisory guideline range did not adequately take into account all of the relevant circumstances. *See United States v. Eicher*, 22-cr-38 (BAH), Sent. Tr. 9/15/23 at 50 (applying § 5K2.7 because the defendant "join[ed] a mob, in the center of the melee, and through the sheer numbers and aggressive conduct towards police, breached the Capitol resulting in

8

stopping the legitimate business of Congress for hours"); *United States v. Black*, 21-CR-127 (ABJ), Sent. Tr. 5/16/23 at 27 (applying an upward departure pursuant to § 5K2.7 for a January 6 rioter); *United States v. Oliveras*, 21-CR-738 (BAH) (same); *United States v. Sparks*, 21-CR-87 (TJK); *United States v. Robertson*, 21-CR-34 (CRC); *United States v. Dunfee*, 23-CR-136 (RBW).

For example, recently, in *United States v. Sparks*, 21-cr-87 (TJK), Judge Kelly sentenced a defendant convicted of violating both 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 231. Prior to sentencing, in light of the Supreme Court's *Fischer* decision, the government moved to dismiss the § 1512(c)(2) count, and at sentencing, Sparks faced an advisory guideline range of 15-21 months. Judge Kelly found it important that despite the dismissal of the § 1512(c)(2) count, the defendant's conduct still included "an intent to obstruct or interfere with that proceeding, that important constitutional proceeding" which the court found to be "pretty dark behavior" which "posed a threat to whether our constitutional process will proceed or whether a mob would interfere with that process." *Sparks* Sentencing Tr., at 87-88. The court found that the "typical person convicted of [18 U.S.C. § 231] engaged in nothing at all like the attack on the Capitol and the certification." *Id*. at 94-95. Because Sparks' advisory guideline range was driven by the § 231 conviction, that range did not "account for the defendant's intent to obstruct, not just law enforcement officers doing their duty under that statute, but a proceeding, or for the purposes of [U.S.S.G. §] 5K2.7, a governmental function. And not any proceeding, but one foundational to our country's governance." *Id.* at 93. The court found Sparks' intent to "interfere or obstruct with the electoral college vote certification . . . plays an important role in explaining why" Sparks' advisory guideline range did not fully account for his criminal conduct. *Id.* at 94. Accordingly, the court found a significant upward departure was warranted under both U.S.S.G. §§ 5K2.7 and § 5K2.21,

9

and in the alternative a variance of equal amount was warranted under the § 3553(a) factors, and sentenced Sparks to 53 months of imprisonment.

Similarly, in *United States v. Robertson*, 21-CR-34 (CRC), Judge Cooper resentenced a defendant after dismissal of a § 1512(c)(2) conviction post-*Fischer*. Without that conviction, the court determined that a new advisory guideline range of 37 to 46 months applied. *See Robertson* Sent. Tr., at 59. But the court also found that an upward departure was appropriate pursuant to U.S.S.G. § 5K2.7, because Robertson's conduct "resulted in a significant disruption of a governmental function, namely halting of the certification . . . and that is so regardless of whether Section 1512(c) applies." *Id.* at 61. The court also found an upward departure appropriate under U.S.S.G. § 5K2.0 because Robertson's conduct was "more harmful or egregious than the typical case represented by the otherwise applicable guideline range." *Id*. After considering the § 3553(a) factors, Judge Cooper sentenced Robertson to 72 months of imprisonment.

And in *United States v. Dunfee*, 23-CR-36 (RBW), Judge Walton sentenced a defendant on a § 231 conviction and a misdemeanor, after his § 1512(c)(2) conviction was dismissed in light of *Fischer*. Judge Walton found an upward departure was warranted under U.S.S.G. § 5K2.7, because Dunfee's actions contributed to and resulted in a significant disruption of the certification of the electoral college vote. Moreover, noting that "the Sentencing Commission did not contemplate the circumstances that occurred on January 6," the court also found that a departure was warranted under U.S.S.G. § 5K2.0(2) because Dunfee's criminal conduct related to "the attempt by a large number of individuals, including the defendant, to stop the peaceful transfer of power." *See Dunfee*, ECF No. 90, at 2. The court departed upward from an advisory range of 18-24 months, and the court sentenced Dunfee to 30 months of imprisonment.

Most recently, in *United States v. Oliveras*, 21-CR-738 (BAH), Judge Howell sentenced a defendant on a § 231(a)(3) conviction, a § 111(a)(1) conviction, and four misdemeanors, after his § 1512(c)(2) conviction was dismissed in light of *Fischer*. Judge Howell found an upward departure was warranted under U.S.S.G. § 5K2.7 (Disruption of Governmental Function) because

> after Fischer, with the dismissal of [the defendant's] 1512(c)(2) conviction, none of the conduct that goes into determining defendant's sentencing guidelines reflect his intent to engage in political violence that poses such a threat to our American democracy… His intent to obstruct Congress in the Electoral College certification by violence, if necessary, go above and beyond what any of his current convictions now take into account.

*Oliveras*, Sentencing Tr. at p. 49. The court noted that "[i]n assessing the extent of the departure, review of how the guidelines for obstruction of an official proceeding at [U.S.S.G. §] 2J1.2 would have applied to defendant [pre-*Brock*] provide a general guide… [and] an upward departure within that range is appropriate." *Id.* at 49-50. The court also noted that it "would impose the same sentence with… an upward variance for the same reasons that are outlined in 5K2.7 and consideration of the 3553(a) factors." *Id.* at 97. From an advisory Guidelines range of 37-46 months' imprisonment, the court departed upward and sentenced Oliveras to 60 months of imprisonment.

Because the seriousness of defendant's crime is not adequately captured by the applicable Guideline, an upward departure is appropriate here as well. If the Court declines to depart, an upward variance is warranted.[3] An upward variance is appropriate when "the defendant's conduct

---

[3] If the Court does apply a departure, the government requests that the Court also specify that it would have imposed the same sentence as a variance. *See United States v. Brevard*, 18 F.4th 722, 728-29 (D.C. Cir. 2021) (upholding the district court's sentence where the departure was erroneously applied but the district court indicated that it was also imposing the sentence as a variance).

11

was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018) (cleaned up).

While the guidelines are certainly an important benchmark, this Court has similarly recognized the need to punish conduct, particularly in this context. While the Supreme Court's decision in *Fischer* has changed defendant's advisory Guideline range, "*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the Court may still consider [defendant's] serious conduct on January 6th, 2021 in its entirety. To reduce [defendant's] sentence . . . would require this Court to take a drastically different view of [defendant's] conduct." *United States v. Hostetter*, 21-CR-392 (RCL), ECF 507, at 4-5 (cleaned up). Indeed, "*Fischer* does not mean that I cannot consider at sentencing evidence that establishes that the defendant intended to obstruct Congress' certification of the electoral vote in determining whether . . . the resulting guideline range fully accounts for the criminal conduct." *Sparks* Sentencing Tr. at 95. *See also United States v. Kelly*, 21-CR-708 (RCL), ECF 151, at 5 ("Nothing about *Fischer* or any hypothetical outcome of [defendant's] appeal bears directly on the severity of his conduct on January 6th . . . . Likewise, the outcome in *Fischer* would not dictate the Court's application of the sentencing factors prescribed in 18 U.S.C. § 3553(a)"); *United States v. Jensen*, 21-CR-6 (TJK), Sent. Tr. at 16 ("[G]iven the importance and the significance of the proceeding of certifying the Electoral College votes, I would vary upward -- even if this [sentencing enhancement] didn't apply, I would vary upward when considering the nature of the offense.")

When it sentenced Kelly, this Court made clear its view that his conduct represented a "serious crime." Sentencing Tr. at 22 (8/18/23). And this Court acknowledged that, as a result of Kelly's and others' conduct on January 6, it "brought the government to a screeching halt . . .

12

actually obstructing the government from being able to go forward with its function, and it brought the whole government to a halt." *Id.*; *see also United States v. Johnatakis*, 21-cr-91, ECF No. 272, at 5 (RCL) ("The Framers designed our constitutional system so that the people govern through their representatives, according to law. Decisions are the result of elections, debates, and compromise. The people, through their representatives, decide. By contrast, those who think political ends justify violent means seek to replace persuasion with intimidation, the rule of law with 'might makes right.' Violence risks begetting a vicious cycle that could threaten cherished conventions and imperil our very institutions of government. In that sense, political violence rots republics. Therefore, January 6 must not become a precedent for further violence against political opponents or governmental institutions. This is not normal. This cannot become normal. We as a community, we as a society, we as a country cannot condone the normalization of the January 6 Capitol riot."). Those were not merely empty words—they were a recognition of the seriousness and unprecedented nature of the riot.

Furthermore, as the Court knows, on January 6, Kelly joined a mob that overran the police officers charged with protecting the Capitol building, and he contributed to the force of the mob as they penetrated the heart of the building: the Senate Floor. Kelly ascended the same set of stairs the Vice President had used to evacuate. After he made it to the Senate floor, Kelly proudly stood at the Vice President's desk. Wasting no time, Kelly took photos and videos of sensitive documents, which he later sent to friends and a reporter. After finally leaving the building, Kelly pumped his fist in the air, proud of his accomplishments. Moreover, throughout the course of Kelly's trial and even at sentencing, this defendant has failed to fully accept responsibility for his actions. *See* Sentencing Tr. at 22 ("I don't think you fully appreciate the seriousness of . . . the

13

crime. I don't think you fully appreciate it could not have developed the way it did without people like you ignoring what was going on when you went up there and you went into the building."). Despite this, after the *Fischer* opinion, Kelly now stands convicted only of misdemeanor violations—despite a jury's finding beyond a reasonable doubt that Kelly had a specific and corrupt intent to interfere with the peaceful transfer of power. The outsized role of Kelly's conduct far surpasses that of a typical trespasser. *See* ECF No. 151, at 1 (noting that the government proved that Kelly also "pushed his body through a police line, helping to clear the way for a group of rioters behind him"). The conduct has not changed. This Court's sentence should not change either.

Also unprecedented is the need for January 6 sentences to promote respect for the law and deter future crime. *See* 18 U.S.C. § 3553(a)(2)(A), (B). The January 6 rioters went far beyond merely breaking the law. As this Court has recognized, the riot on January 6 was not an act of civil disobedience – instead it was violent, opportunistic, coercive, and selfish. *See Johnatakis*, ECF No. 272, at 2.

And the risk of another attack on the Capitol remains. "The heated and inflammatory rhetoric that brought the defendant to the District has not subsided. The lie that the election was stolen and illegitimate is still being perpetrated." *United States v. Meredith*, 21-CR-159 (ABJ), Sent. Tr. at 94-95. If we are to prevent another January 6 and restore respect for the rule of law, sentences in these cases must send a message, and that message will not be conveyed by treating the January 6 riot as a run-of-the-mill offense.

In addition to departing upwards, other courts have varied upward from the advisory guideline range specifically because of the unique and serious nature of the crimes committed that day. *See United States v. Reffitt,* 21-CR-32 (DLF), Mem. Op. and Order 4/10/24 at 10-11 (upward

14

variance would be justified because "as other judges in this district have noted, the proceedings at issue on January 6, 2021 were of much greater significance than run-of-the-mill 'judicial, quasi-judicial, and adjunct investigative proceedings'"); *United States v. Fonticoba*, 21-CR-638 (TJK), Sent. Tr. 1/11/24 at 66–67 (stating that, even if the defendant's § 1512 conviction were invalidated, a significant upward variance was warranted to account for the defendant's intent "to obstruct the proceeding and the nature of the proceeding itself"); *United States v. Secor*, 21-CR-157 ( (TNM)), Sent. Tr. 10/19/22 at 53 ("I believe both the seriousness of the event — you obstructed the certification of an official proceeding — and your particular role in it . . . require a significant upward variance"); *United States v. Hale-Cusanelli*, 21-CR-37 (TNM)), Sent. Tr. 9/22/22 at 87 ("I also believe the extensive damage and injuries caused on January 6th with your fellow rioters require additional punishment beyond what my [guideline] calculation allows.").[4]

In this case, the government submits that an upward variance is warranted to reach an appropriate sentence – the original sentence imposed by this Court. As discussed in our original sentencing memorandum, similarly-situated defendants – who committed similar conduct as Kelly

---

[4] The D.C. Circuit has made clear that it "ordinarily presume[s] a district court imposing an alternative non-guidelines sentence took into account all the factors listed in § 3553(a) and accorded them the appropriate significance." *United States v. Warren*, 700 F.3d 528, 533 (D.C. Cir. 2012) (quoting *United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005)). But as recently discussed in *United States v. Iracks*, 2024 WL 3308241 (D.C. Cir. July 5, 2024), for a sentence above the applicable Guidelines range, the Sentencing Reform Act provides that the district court must state "the specific reason for the imposition of a sentence different from that described [in the Guidelines,]" both orally during the sentencing and on a written form appended to the judgment. 18 U.S.C. § 3553(c)(2) (emphasis added). Accordingly, the government requests that the Court make specific findings that this defendant's "conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range" and "explain why the otherwise applicable Guidelines calculation 'does not fully account for the described criminal conduct.'" *United States v. Brown*, 892 F.3d 385, 404–05 (D.C. Cir. 2018) (quoting *Brown*, 808 F.3d at 867, 872 (D.C. Cir. 2015)).

15

– received comparable or greater sentences for similar conduct.

## VI.     LEGAL BACKGROUND ON CONSECUTIVE SENTENCES

To achieve a sentence of 30 months of incarceration, the court would need to impose partially consecutive sentences on some counts. A federal court "can typically choose whether to run" a defendant's "sentences concurrently or consecutively." *Lora v. United States*, 599 U.S. 453, 455 (2023); *see also Setser v. United States*, 566 U.S. 231, 236 (2012) ("Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose . . . ."). While the Sentencing Guidelines default position is that sentences of imprisonment run concurrently, "if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts *shall* run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d) (emphasis added); *see also United States v. Lafayette,* 337 F.3d 1043, 1050 & n.11 (D.C. Cir. 2003) (explaining that a court may impose consecutive or "stack[ed]" sentences to achieve a total sentence in excess of the statutory maximum on a single count).

Moreover, "although the Guidelines should be the starting point and the initial benchmark, district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in § 3553(a)." *Pepper v. United States*, 562 U.S. 476, 490 (2011). Specifically, 18 U.S.C. § 3584(a) provides that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time ... the terms may run concurrently or consecutively," while Section 3584(b) states that "[t]he court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment

16

is being imposed, the factors set forth in [18 U.S.C.] section 3553(a)." District Courts thus have discretion to deviate "from the guidelines' recommendation that a defendant's sentences run concurrently and to impose, instead, consecutive sentences after considering the § 3553(a) factors. *United States v. Lymon*, 905 F.3d 1149, 1153 (10th Cir. 2018).

Here, the Section 3553(a) factors counsel that Kelly be sentenced to a term of incarceration above the statutory maximum sentence for Counts Two and Three and that his sentence of incarceration run consecutively for Counts Two and Three, or by structuring the other counts accordingly. As explained above, January 6 was an unprecedented event, and this defendant's role was an integral one. The government is aware of at least one January 6 case where a defendant's sentence ran consecutively. *See United States v. Nordean, et. al*, 21-CR-175 (TJK), Sep. 5, 2023 Minute Order. And this Court has already indicated that it may be appropriate in this case to impose consecutive sentences if Kelly's prior felony conviction was subsequently vacated, leaving only misdemeanor convictions. *See* ECF No. 147 at 10 ("The Court is much likelier to impose a sentence of at least 12 months, and perhaps greater if the Court decides to impose any sentences consecutively. The Court is likely to impose such a sentence even if it requires an upward variance from the guidelines.").

Accordingly, the government requests that the Court vary upwards and sentence Kelly to 30 months' imprisonment in order to give effect to "the concerns underlying the Government's requests for these enhancements under the § 3553(a) factors at sentencing." *See United States v. Seefried*, 639 F. Supp. 3d 8, 20 (D.D.C. 2022).

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By: /s/ Ashley Akers
ASHLEY AKERS
Trial Attorney
U.S. Department of Justice
Detailed to the D.C. U.S. Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Ashley.Akers@usdoj.gov
(202) 353-0521

/s/ Gregory Rosen
GREGORY ROSEN
Assistant United States Attorney
VA Bar No. 82584
United States Attorney's Office
District of Columbia
601 D Street N.W.
Washington, D.C. 20530
Gregory.Rosen@usdoj.gov
(202) 252-6932