UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | |
| LEO KELLY, | ) ) | Case No. 1:21-cr-708-RCL |
| Defendant. | ) ) ) | |

## LEO KELLY'S POSITION ON RESENTENCING

The Circuit ordered that Leo Kelly's sole felony conviction under 18 U.S.C. § 1512(c) be vacated. Under the current Judgment, that means Kelly's remaining sentences are twelve months' incarceration on two Class A misdemeanors and six months' incarceration on four Class B misdemeanors, all running concurrently. According to a recent decision of this Court, the Court may not revise Kelly's sentences because the Circuit did not "remand [] for resentencing." *United States v. Pryer*, 2024 U.S. Dist. LEXIS 18270, *8-17, __ F. Supp. 3d __ (D.D.C. Feb. 2, 2024) (Lamberth, J.); Mandate, ECF No. 152-1.

Even if the Court finds resentencing consistent with *Pryer*, the terms of the mandate here, and § 3582, imposing additional prison time would be in error. As a senior BOP official recently explained to the Court, Kelly served 11 months of his sentence before he was released under a First Step Act release date of September 19. Any additional prison time would reach far over the applicable Guidelines range and statutory maximum sentence and would require consecutive (re)sentencing. Yet such an abnormal punishment must be supported by specific reasons why Kelly's case calls for a more severe sentence "than other cases falling within the same Guidelines categories." *United States v. Brown*, 857 F.3d 403, 405 (D.C. Cir. 2017). As the government's submission concedes, no judge in this Court has sentenced a Capitol riot defendant

1

to more than a year of imprisonment in the Guidelines categories applicable to a conviction under § 1752; no judge has consecutively sentenced such a defendant. Kelly, who was inside the Capitol building for less than 30 minutes and committed no violent acts, should not be the first. In any case, the government cannot cogently articulate why he would be. Moreover, if the Court were to follow the government's resentencing arguments, the imposition of a more severe penalty on Kelly's misdemeanor convictions, after a successful appeal, would violate the due process principles announced in *North Carolina v. Pearce*, 395 U.S. 711 (1969).

In short, in asking the Court to simply reimpose Kelly's 30-month sentence, the government urges the Court to evade both the judgment of the United States Supreme Court in *Fischer v. United States*, 144 S. Ct. 2176 (2024) and the judgment of the Circuit in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024).

**Background**

Between May 3 and 9, 2023, the Court conducted a jury trial. The Court will recall that Kelly traveled from Iowa to D.C. with his parents to attend the former president's rally. ECF No. 128, p. 1. After following the crowd to the Capitol, he entered the building at 2:43 p.m. and remained inside for a total of 26 minutes. *Id.*, p. 2. Approximately five of those minutes were spent on the Senate floor, where he prayed, walked around and took photos. Evidence showed that Kelly stopped a rioter in the building from damaging property. *Id.* After January 6, Kelly sought out the FBI so he could turn himself in and fully cooperated. He committed no violent acts and no evidence showed him attempting to prevent members of Congress or law enforcement from performing their duties that day, beyond the basic fact of his presence. *Id.*

Kelly was found guilty of the following charges: Obstruction of an Official Proceeding and Aiding and Abetting, in violation of §§ 1512(c)(2) and 2 (Count One); Entering and

Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); Entering and Remaining on the Floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A) (Count Four); Entering and Remaining in Certain Rooms in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(C) (Count Five); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Six); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Seven).

On August 18, 2023, the Court sentenced Kelly. Kelly submitted a large number of letters in support. A central theme was the significant value Kelly contributed to his community in Iowa. Sentencing Tr., p. 16. Kelly had zero criminal history points. PSR, ¶ 48.

As the most serious offense, Kelly's § 1512(c)(2) conviction determined that the controlling Guideline would be U.S.S.G. § 2J1.2 ("Obstruction of Justice"), with a base offense level of 14. The Court applied the specific offense characteristic at § 2J1.2(b)(2) for substantial interference with "the administration of justice." That rendered a Guidelines range of 24 to 30 months' incarceration. Sentencing Tr., p. 3. The Court sentenced Kelly to 30 months' incarceration on the § 1512(c)(2) conviction. *Id.*, p. 23.

In turn, the Court's determination meant that, under the Guidelines, the Court was directed to impose the "total punishment" of 30 months' incarceration on every remaining count of conviction, to the extent permitted by applicable statutory maxima. U.S.S.G. § 5G1.2(b). For that reason, the Court imposed concurrent sentences of 12 months' incarceration on Counts Two and Three and of six months' incarceration on Counts Four through Seven, the statutory maxima for all those misdemeanor counts.

Kelly surrendered to the Bureau of Prisons on October 18, 2023.

In July 2024, the Supreme Court held that § 1512(c) is an evidence-impairment crime and does not reach conduct unrelated to evidence, such as the "direct" obstruction of an official proceeding crime the government devised for the January 6 cases. *Fischer*, 144 S. Ct. at 2180. Subsequently, the Circuit ordered the Court to vacate Kelly's § 1512(c) conviction. Mandate, ECF No. 152-1.

On September 19, Kelly was released under the properly calculated First Step Act release date. BOP Adjusted Release Notification, ECF No. 156-2.[1] He had served 11 months of incarceration.

**Argument**

**I.     The Court has held that it may not resentence Kelly here**

In *Pryer*, this Court recently addressed the question of when it may resentence a defendant in a manner consistent with § 3582 and the Circuit's mandate. 2024 U.S. Dist. LEXIS 18270, *8-17. Kelly reproduces the Court's analysis:

> "Once a federal criminal sentence is imposed, it is generally considered final." *United States v. Lawrence*, 1 F.4th 40, 46, 452 U.S. App. D.C. 412 (D.C. Cir. 2021) (citing 18 U.S.C. §§ 3582(b) and 3742). Since Pryer's judgment of conviction included not only a term of probation but also a term of imprisonment, her sentence falls within the scope of the general rule of finality. *See* § 3582(b) ("Notwithstanding the fact that a sentence to imprisonment can subsequently be—(1) modified pursuant to the provisions of [§ 3582(c)]; (2) corrected pursuant to the provisions of rule 35 of the Federal Rules of Criminal Procedure and section 3742; or (3) appealed and modified, if outside the guideline range, pursuant to the provisions of section 3742; *a judgment of conviction that includes such a sentence* constitutes a final judgment for all other purposes.") (emphasis added).

---

[1] The notification says that BOP "received an appeal order to vacate" the § 1512(c) count. ECF No. 156-2. Counsel provided a copy of the Court of Appeals' order and mandate to BOP but he does not know whether it had already received that information. In any case, counsel did not request that Kelly be immediately released but merely provided the mandate to BOP against the risk that Kelly would be held beyond the statutory maxima for his Class A and Class B misdemeanor convictions under the current judgment.

The finality of criminal convictions and sentences serves a range of essential functions. *See, e.g., Sanders v. United States*, 373 U.S. 1, 24-25, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963) (Harlan, J., dissenting) ("Both the individual criminal defendant and society have an interest in insuring that there will at some point be the certainty that comes with an end to litigation, and that attention will ultimately be focused not on whether a conviction was free from error but rather on whether the prisoner can be restored to a useful place in the community."); Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attacks on Criminal Judgments*, 38 U. CHI. L. REV. 142, 149 (1970) ("[I]t is difficult to urge public respect for the judgments of criminal courts in one breath and to countenance free reopening of them in the next."); Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 HARV. L. REV. 441, 451-53 (1963) (identifying interests favoring finality, including conservation of resources and the effectiveness of the criminal law's "substantive commands").
In apparent recognition of competing interests, however, Congress has created "a few narrow exceptions" to this "rule of finality." *United States v. Long*, 997 F.3d 342, 347, 452 U.S. App. D.C. 167 (D.C. Cir. 2021). 18 U.S.C. § 3582(c) sets out three situations in which a court may modify an imposed term of imprisonment. "First, certain prisoners may be granted compassionate release due to their advanced age or for other 'extraordinary and compelling reasons[.]'" *Lawrence*, 1 F.4th at 46 (quoting § 3582(c)(1)(A)). "Second, prison terms can be modified 'to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure[.]'" *Id.* (quoting § 3582(c)(1)(B)). "And third, courts can entertain motions to reduce prison terms if the applicable sentencing range for the defendant has been lowered by the Sentencing Commission." *Id.* (citing § 3582(c)(2)).

Whether or not § 3582 is jurisdictional, it confines a district court's authority to modify a final sentence to the limited circumstances authorized by statute or rule. Section 3582(c) provides that "[t]he court may not modify a term of imprisonment once it has been imposed except" under the three circumstances specified by Congress. *See United States v. Morris*, 116 F.3d 501, 504, 325 U.S. App. D.C. 157 (D.C. Cir. 1997) ("Under 18 U.S.C. § 3582(c) a court may modify a sentence only in three circumstances . . . ."). Indeed, numerous circuits have held that a district court can revise a sentence only when specifically authorized by Congress. *See, e.g., United States v. Meza*, 620 F.3d 505, 507 (5th Cir. 2010); *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010); *United States v. Cunningham*, 554 F.3d 703, 708 (7th Cir. 2009); *United States v. Washington*, 549 F.3d 905, 914-15 (3d Cir. 2008); *United States v. Zsofka*, 121 F.3d 696 (1st Cir. 1997) (per curiam); *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996); *United States v. Minor*, 846 F.2d 1184, 1188 (9th Cir. 1988). Several courts in this district have held the same. *See United States v. Scott*, 215 F. Supp. 3d 9, 10 (D.D.C. 2012) ("A district court has the power to modify a previously imposed sentence only when authorized by statute.") (citing 18 U.S.C. § 3582(c)(2)); *United States v. Greene*, 516 F. Supp. 3d 1, 28 (D.D.C. 2021) (same); *United States v. Goode*, 953 F. Supp. 2d 74, 76 (D.D.C. 2013) (same).

. . . .

5

> While a defendant may seek review of his or her sentence on appeal, Pryer has not pursued that course. *See* 18 U.S.C. § 3742(a) (providing that "[a] defendant may file a notice of appeal in the district court for review of an otherwise final sentence" in several circumstances, including if the sentence "was imposed in violation of law"); § 3582(b)(2) (providing that a sentence of imprisonment can be "corrected" pursuant to § 3742); 28 U.S.C. § 1291 (granting the courts of appeals "jurisdiction of appeals from all final decisions of the district courts of the United States"). *Had Pryer appealed, the Circuit might have vacated her sentence and remanded for resentencing*. *See, e.g., Little*, 78 F.4th at 461 (vacating and remanding for resentencing when a defendant challenged his split sentence of imprisonment and probation for conviction of a single petty offense); *Little*, 2024 U.S. Dist. LEXIS 8174, 2024 WL 181260 at *3-4 (holding that on remand from the court of appeals, the district court was required to resentence the defendant). But Pryer never pursued a direct appeal of her sentence.

*Pryer*, 2024 U.S. Dist. LEXIS 18270, *8-17 (emphasis added).

Here, upon a joint motion of the parties, the Circuit merely vacated Kelly's § 1512(c) conviction and remanded for "further proceedings." ECF No. 152-1.  Kelly did not "seek review of his [] sentence on appeal." *Pryer*, 2024 U.S. Dist. LEXIS 18270, *17.  The Circuit did not "remand[] for resentencing" or vacate any sentence.  *Id.*  According to this Court, no other exception to § 3582 applies.  *Id.*  Therefore, according to the Court, it may not resentence Kelly.

## II.   If the Court does revise Kelly's sentence, it would be erroneous to impose additional prison time

Imposing additional prison time on Kelly would go well beyond the applicable Guidelines range.  As the government concedes (Gov't Resentencing Submission, pp. 16-17), no judge in this Court has imposed a sentence greater than one year in a § 1752 case related to the Capitol riot and thus it would be in error to do so here under the Circuit's *Brown* decision.

Kelly believes that his § 1752 convictions should be scored under U.S.S.G. § 2B2.3(b)(1)(A)(vii), yielding a total offense level of 6, rather than § 2A2.4(a), which would yield a total offense level of 10.  Kelly's § 1752(a)(2) conviction, by the statute's terms, did not necessarily entail "obstructing or impeding officers." *See* § 2A2.4.  Accordingly, under the categorical approach, Section 2A2.4 does not apply.  *E.g.*, *United States v. Carr*, 946 F.3d 598,

6

601 (D.C. Cir. 2020). Moreover, even if it did apply, the two-level downward adjustment for Zero-Point Offender would apply, reducing Kelly's adjusted offense level to 8. U.S.S.G. § 4C1.1. Kelly did not "use violence or credible threats of violence in connection with the offense," *Id.*, nor did the evidence show that Kelly was vicariously responsible for such violence under any liability theory cognizable in the Guidelines. U.S.S.G. § 1B1.3. Thus, Kelly would fall in Zone A of the Sentencing Table, pursuant to which "a sentence *other than* a sentence of imprisonment . . . is generally appropriate." § 5C1.1 cmt. n. 10 (emphasis added).

In any case, even if the government were correct that Kelly's adjusted offense level is 10, and thus that his Guidelines range is 6-12 months' incarceration, Kelly has already served an 11-month sentence. Therefore, to impose additional prison time on Kelly, the Court would have to implement an above-Guidelines sentence and run it consecutively with the sentence of another count, as § 1752 is a misdemeanor with a one-year statutory maximum. That is, the government asks the Court to transform § 1752 into a felony, and does so only after the Circuit ordered that Kelly's bona fide felony conviction be vacated.

This the Court cannot do. Such a punishment must be supported by specific reasons why Kelly's case calls for a more severe sentence "than other cases *falling within the same Guidelines categories*." *Brown*, 857 F.3d at 405 (emphasis added). But, as the government's submission itself shows, no judge in this Court has imposed a consecutive sentence longer than one year on a § 1752 conviction. Gov't Resentencing Submission, pp. 16-17. As the Court knows, many of those § 1752 defendants entered the Senate chamber like Kelly.

The government's arguments here are as nonspecific as they are grandiloquent. Kelly himself, the government charges, "attack[ed] democracy" and, somehow, "abandon[ed] the rule of law." Gov't Resentencing Submission, p. 6. While the Capitol riot was undoubtedly a

7

disgraceful event in the country's history, there is no factual or logical argument that Kelly was the proximate cause of it. Worse, the statement that Kelly "attack[ed] democracy," or opposes that form of government, has no basis in the evidence or legal reasoning. Metaphor is not an appropriate ground for imposing prison time. It is ad hominem that, in counsel's view, has no place in a sentencing memorandum. As for abandoning the rule of law, one might argue indeed that the Supreme Court did its part to guarantee it in *Fischer*.

The government adds that, "even before *Fischer*, judges of this Court gave significant upward departures and/or variances in January 6 cases when they found the advisory guideline range inadequate." Gov't Resentencing Submission, p. 8. Several pages of citations follow. *Id.*, pp. 8-11. The Court will not fail to notice what the government occasionally endeavors to obscure: that all the cited cases concern felonies, not misdemeanors; that none of the cases involves consecutive sentences, which run counter to the Guidelines presumption of concurrent sentences; that whereas many judges have sentenced above the Guidelines range in connection with charges involving assaults on law enforcement officers, none has done so in connection with a § 1752 trespass conviction.

The upward departure in U.S.S.G. § 5K2.7 is not a loophole to evade the *Fischer* decision. The departure applies when "the defendant's conduct resulted in a significant disruption of a government function." § 5K2.7. The term "resulted" requires the government to establish actual causation, or "cause in fact," not legal cause. *E.g.*, *United States v. Jeffries*, 958 F.3d 517, 520-22 (6th Cir. 2020) (analyzing the phrase "results from" in § 841). The evidence in this case did not show that the recess of the joint session on January 6 was caused in fact by Kelly's conduct. Nor does the government even argue the point. Moreover, according to the government itself, "interference with a government function" was "inherent" in the § 1752(a)(2)

offense. Gov't Resentencing Submission, p. 4 (arguing that § 2A2.4 applies). That is another reason why the departure does not apply, by its own terms. § 5K2.7. Finally, apparently no judge in this Court has applied that departure to a § 1752 conviction, and because many § 1752 defendants entered the Senate Chamber like Kelly, the Court cannot cite a specific reason why Kelly's case calls for a more severe sentence using that departure "than other cases *falling within the same Guidelines categories*." *Brown*, 857 F.3d at 405 (emphasis added).

The government argues that Kelly should be the very first defendant to receive an above-Guidelines, stacked sentence on his misdemeanor convictions because he "joined a mob that overran the police officers charged with protecting the Capitol building, and he contributed to the force of the mob as they penetrated the heart of the building. . ." Gov't Resentencing Submission, p. 13. That explanation does not hang together, since this Court has given far lower, within-Guidelines sentences to many defendants who did those things. *United States v. Morgan-Lloyd*, 21-cr-164-RCL (26 months' probation); *United States v. Wickersham*, 21-cr-606-RCL (3 months' home detention); *United States v. Smith*, 23-cr-6-RCL (30 days' home detention); *United States v. Kuecken*, 23-cr-6-RCL (30 days' home detention); *United States v. Traugh*, 23-cr- 212-RCL (45 days' home detention); *United States v. Scavo*, 21-cr-254-RCL (60 days' incarceration); *United States v. McAuliffe*, 21-cr-608-RCL (60 days' home detention); *United States v. Little*, 21-cr-315-RCL (60 days' incarceration); *United States v. O'Brien*, 21-cr-633-RCL (3 months' incarceration); *United States v. Hemphill*, 21-cr-555-RCL (60 days' incarceration); *United States v. Mazzio*, 21-cr-214-RCL (60 days' incarceration); *United States v. Uptmore*, 21-cr-149-RCL (30 days' incarceration); *United States v. Lammons*, 22-cr-103- RCL (30 days' incarceration); *United States v. Miller*, 22-cr-191-RCL (30 days' incarceration); *United States v. Steiner*, 22-cr-191-RCL (30 days' incarceration); *United States v. Mott*, 21-cr-464-RCL

(30 days' incarceration); *United States v. Armstrong*, 22-cr-45-RCL (14 days' incarceration).

It is important to emphasize that, in asking the Court to simply reimpose Kelly's 30-month sentence, it is not only the Supreme Court's judgment the government seeks to avoid. It also seeks to end-run the Circuit's judgment in *Brock*. The Court reached a Guidelines range of 24-30 months' incarceration in this case by applying the specific-offense characteristic in § 2J1.2(b)(2) for Kelly's substantial interference with "the administration of justice." But the Circuit held that Congress does not "administer justice." *Brock*, 94 F.4th at 59. The government asks the Court to pick the 30-month number on the basis of reasoning that the Circuit has rejected.

For all these reasons, mechanically reimposing Kelly's 30-month sentence would result in an erroneous judgment.

### III. Adopting the government's arguments would violate Kelly's due process rights

Kelly successfully appealed his § 1512(c) conviction. If the Court now adopts the government's arguments and imposes a more severe sentence on his remaining convictions to evade the Supreme Court's and Circuit's decisions, it would amount to a due process violation under the principles of *North Carolina v. Pearce*.

In *Pearce*, the Supreme Court held that,

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

*Pearce*, 395 U.S. at 725.

To "assure the absence of such motivation," the Court held, "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must

10

affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." *Id.* at 726.

To be sure, Kelly is not being resentenced after a new trial and the government seeks reimposition of the 30-month sentence. But examined closely, those distinctions are negligible. After Kelly's successful appeal of his § 1512(c) conviction, the government seeks not only to increase the severity of his *remaining* sentences, but to obtain a sentence nearly three times the length of the relevant statutory maximum. That the government seeks to do this precisely because Kelly successfully appealed his felony conviction is apparent on the face of the government's request: it asks the Court to impose a § 1512(c)-derived sentence as though the Supreme Court never decided *Fischer* and as though the Circuit never decided *Brock*. If that is not "punishing the defendant for his having succeeded in getting his original conviction set aside," it is hard to know what is. *Pearce*, 395 U.S. at 724.

The reasoning behind *Pearce* is no less applicable here. "A court is without right to . . . put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered. . . It is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice." *Pearce*, 395 U.S. at 724 (internal quotation marks omitted). If the Court can simply impose a 30-month felony-type sentence on duplicative misdemeanor counts by resentencing far above the Guidelines range, by stacking sentences, and by ignoring similarly situated misdemeanants, Kelly's appellate rights lose all meaning. Indeed, the Supreme Court's and Circuit's judgments lose all meaning. That is

11

precisely what the government is hubristically attempting.

Accordingly, imposing the sentence requested by the government would violate Kelly's due process rights. Kelly has served 11 months of prison time, far longer than other January 6 misdemeanants this Court has sentenced. Because that sentence is sufficient to serve the purposes of § 3553(a), Kelly respectfully requests that the Court either decline to resentence or impose a sentence of time served.

Dated: Oct. 30, 2024							Respectfully submitted,

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorney for Leo Kelly*

**Certificate of Service**

I hereby certify that on the 30th day of October, 2024, I filed the foregoing submission with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s): Counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

*/s/ Nicholas D. Smith*