UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**LEO CHRISTOPHER KELLY**,<br><br>*Defendant*. | Case No. 21-cr-708-RCL |

## MEMORANDUM OPINION

Defendant Leo Christopher Kelly participated in the Capitol Riots that took place on January 6, 2021. On May 9, 2023, a jury convicted Mr. Kelly on seven counts for his conduct that day. *See* Verdict Form, ECF No. 107. On August 18, 2023, this Court sentenced Mr. Kelly to a thirty-month term of incarceration based on his violation of 18 U.S.C. § 1512(c)(2), Obstruction of an Official Proceeding. *See* Judgment, ECF No. 135. His other offenses of conviction are misdemeanors, for which he was sentenced to concurrent terms of either six or twelve months. *Id.*

One week later, Mr. Kelly appealed. *See* Notice of Appeal, ECF No. 137. His appeal was still pending when the Supreme Court decided *Fischer v. United States*, 144 S. Ct. 2176 (2024), in which the Supreme Court articulated a narrow interpretation of § 1512. Accordingly, the parties jointly moved the D.C. Circuit to vacate Mr. Kelly's § 1512 conviction, while leaving his other convictions intact. *See* Joint Mot. to Govern Future Proceedings 1, *United States v. Kelly*, No. 23-3140 (D.C. Cir. Aug. 29, 2024). The parties urged the Court of Appeals to remand the case "for further proceedings, at which time the parties may request resentencing or seek other relief as appropriate." *Id.* at 3. On September 9, 2024, the Court of Appeals ordered that Mr. Kelly's "conviction under 18 U.S.C. § 1512(c)(2) be vacated and the case be remanded for further

1

proceedings." *See* Per Curiam Order, *United States v. Kelly*, No. 23-3140 (D.C. Cir. Sept. 9, 2024).[1]

From there, the case took an unusual turn. The Bureau of Prisons received a copy of the Court of Appeals' mandate and determined erroneously that, with Mr. Kelly's § 1512 conviction now vacated, he had by then served the entirety of his sentence. Accordingly, on September 19, 2024, Mr. Kelly was prematurely released from the correctional facility in Rochester, Minnesota where he was being held, after serving just eleven months of his thirty-month sentence. *See* Mot. for Immediate Status Conference, ECF No. 153. On September 26, 2024, this Court convened a status conference and ordered the parties to submit resentencing memoranda within thirty days, after which the Court would set a resentencing date for Mr. Kelly. *See* Minute Entry of Sept. 26, 2024.

The parties have submitted their resentencing briefs. *See* Gov.'s Sent'g Mem., ECF No. 157; Def.'s Sent'g Mem., ECF No. 158. As expected, the briefs discuss each party's view of what Mr. Kelly's sentence should be if and when he is resentenced. However, the defense's brief also raises novel arguments challenging the Court's authority to resentence Mr. Kelly and its discretion to resentence Mr. Kelly to a term exceeding twelve months on his non-vacated counts of conviction. The Government submitted a reply, expressing its disagreement on both accounts. *See* Gov.'s Reply, ECF No. 159. In order to avert a time-wasting discussion of these threshold issues

---

[1] Under the Government's interpretation of the Court of Appeals' Order, this Court is now required to vacate Mr. Kelly's § 1512 conviction. *See* Gov.'s Sent'g Mem. 1. The Court reads the D.C. Circuit's mandate differently: The Court of Appeals' Order itself has *already* vacated Mr. Kelly's § 1512 conviction, and all that remains for this Court on remand is to conduct "further proceedings" as appropriate. This is the most natural reading of the Order because the statement concerning vacatur comes before the language remanding the case for further proceedings. If the Court of Appeals intended for *this* Court to vacate Mr. Kelly's § 1512 conviction, the Order would instead call for the case to be remanded for vacatur of the conviction and for such further proceedings as this Court deems suitable. This interpretation is also more congruous with the text of the Joint Motion which prompted the Court of Appeals' Order, which first asked the D.C. Circuit itself to vacate Mr. Kelly's § 1512 conviction, and then "further request[ed] [the D.C. Circuit] to remand the case for further proceedings . . . ." Joint Mot. to Govern Future Proceedings 1.

2

at Mr. Kelly's eventual resentencing, the Court sees fit to address Mr. Kelly's arguments in advance. The Court now clarifies that it possesses the authority and discretion to reimpose a thirty-month sentence upon resentencing if it sees fit.

**I.     THE COURT HAS AUTHORITY TO RESENTENCE MR. KELLY**

Mr. Kelly first argues that the Court is without authority to resentence Mr. Kelly. Def.'s Sent'g Mem. 4–6. The defense relies heavily on this Court's opinion in *United States v. Pryer* which, in pertinent part, held that "[o]nce a district court imposes a final criminal sentence, it has no authority to alter that sentence except in a manner permitted by statute or the Federal Rules of Criminal Procedure." *United States v. Pryer*, 715 F. Supp. 3d 72, 77 (D.D.C. 2024). Undoubtedly, if a defendant "seek[s] review of his or her sentence on appeal" pursuant to 18 U.S.C. § 3742, and provided the Court of Appeals vacates the sentence and remands for resentencing, the district court has statutory authorization to resentence the defendant. *Id.* at 80 (citing *United States v. Little*, No. 21-cr-315-RCL, 2024 WL 181260, at *3–4 (D.D.C. Jan. 17, 2024), as an example of a case where resentencing was required after vacatur and remand); 18 U.S.C. § 3582(b) (empowering a district court to modify a sentence when authorized to do so by 18 U.S.C. § 3742). But, Mr. Kelly argues, he did not "seek review of his . . . sentence on appeal" within the meaning of § 3742 or this Court's analysis in *Pryer*; rather, his conviction was vacated pursuant to the parties' Joint Motion to the Court of Appeals. Def.'s Sent'g Mem. 6. Moreover, as Mr. Kelly points out, the D.C. Circuit did not explicitly "remand[] for resentencing," but rather remanded Mr. Kelly's case for "further proceedings." *Id.*

Mr. Kelly takes too narrow and too literal a reading of both *Pryer* and the D.C. Circuit's mandate. Likening himself to the defendant in *Pryer*, Mr. Kelly argues that he, too, never sought review of his sentence on appeal and therefore, as in *Pryer*, his sentences on the non-vacated counts should be accorded finality. This argument rests more on prevarication and semantics than legal

3

principle. First, Mr. Kelly's criminal docketing statement unambiguously announces that he was challenging his conviction *and* sentence on appeal. Criminal Docketing Statement, *United States v. Kelly*, No. 23-3140 (D.C. Cir. Jan. 8, 2024). Second, in Mr. Kelly's Motion to Hold Case in Abeyance, submitted to the Court of Appeals before the *Fischer* decision, he clearly stated that he was "challeng[ing] his conviction for obstruction of an official proceeding under 18 U.S.C. § 1512(c), his sole felony conviction . . . ." *See* Mot. to Hold Case in Abeyance, *United States v. Kelly*, No. 23-3140 (D.C. Cir. Feb. 29, 2024). As a matter of common sense, "a defendant . . . who appeals his conviction is almost always appealing his sentence too." *United State v. Ramirez*, 932 F.2d 374, 376 (5th Cir. 1991). Taken together, these documents belie Mr. Kelly's late-breaking efforts to recharacterize the nature and purpose of his appeal. As would have been apparent to the D.C. Circuit, Mr. Kelly was indeed seeking review of his sentence on appeal, based on his belief that it was "imposed in violation of law," 18 U.S.C. § 3742(a)(1).

The parties' Joint Motion to vacate Mr. Kelly's § 1512 conviction and the D.C. Circuit's ensuing Order further reinforce this conclusion. The Joint Motion rests explicitly and exclusively on the Supreme Court's decision in *Fischer*. Joint Mot. to Govern Future Proceedings 3 ("Given the Supreme Court's decision in *Fischer*, the parties respectfully move to vacate Kelly's conviction under 18 U.S.C. §§ 1512(c)(2) and 2 (Count One) . . . ."). This leads inexorably to the conclusion that, when the Court of Appeals vacated Mr. Kelly's conviction, it did so on the grounds that, in light of *Fischer*, the conviction was no longer consonant with the controlling interpretation of § 1512. Necessarily, then, Mr. Kelly's sentence for his now-unlawful conviction was "imposed in violation of law," and the D.C. Circuit's remand to this Court therefore authorizes resentencing. 18 U.S.C. § 3742(f)(1) (requiring that, if a sentence is imposed in violation of law, the court of

4

appeals shall remand the case to the district court "for further sentencing proceedings with such instructions as the court [of appeals] considers appropriate").

In sum, Mr. Kelly's position could not be further from that of the defendant in *Pryer*. The *Pryer* defendant had not filed an appeal at all by the time the Court denied her motion for early termination of probation. *Pryer*, 715 F. Supp. 3d at 80. Mr. Kelly, by contrast, *has* filed an appeal, in which he explicitly announced his intent to challenge both his conviction and sentence, and received an Order from the D.C. Circuit vacating his now-unlawful § 1512 conviction (and, by implication, the sentence associated with it) and remanding for further proceedings. Under these circumstances, § 3742 authorizes the Court to conduct a resentencing.

Second, Mr. Kelly attempts to make hay of the fact that the D.C. Circuit's Order does not expressly call for resentencing which, in his view, indicates that resentencing is not among the "further proceedings" contemplated by the remand order. That argument, too, is unavailing. The D.C. Circuit has provided district courts with instructions for interpreting broadly worded mandates such as the one at issue in this dispute. In *United States v. Blackson*, the D.C. Circuit directed that "in the absence of specific remand instructions, the general rules set forth in . . . [*United States v.*] *Whren* . . . define the scope of a district court's authority on remand." 709 F.3d 36, 42 (D.C. Cir. 2013) (citing *United States v. Whren*, 111 F.3d 956 (D.C. Cir. 1997)). One such rule, articulated in *Whren* and explicitly re-affirmed in *Blackson*, is that where the Court of Appeals "cannot ascertain whether the District Court's sentence on a valid conviction was influenced by a conviction on a separate count that is later overturned on appeal, the proper course is to remand so that the District Court may reconsider the sentence imposed." *Whren*, 111 F.3d at 958 (quoting *United States v. Lyons*, 706 F.2d 321, 335 n.25 (D.C. Cir. 1983)); *see also Blackson*, 709 F.3d at 40–41. That principle is squarely applicable here, and must govern this Court's interpretation of

the D.C. Circuit's remand for "further proceedings." The best interpretation of the D.C. Circuit's Order, therefore, is that it affords this Court the discretion to decide whether the circumstances of the case call for resentencing. It does not, as Mr. Kelly suggests, implicitly foreclose resentencing by omission.

Moreover, although this Court does not profess to speak for the judges of the D.C. Circuit and has no power to read their minds, the Circuit would have had good reason to leave this decision to this Court's discretion. On two separate occasions, this Court has stated that it would consider resentencing Mr. Kelly to consecutive sentences for his misdemeanor counts if his § 1512 conviction should be vacated, but on both occasions this Court declined to commit in advance to doing so. *See United States v. Kelly*, No. 21-cr-708-RCL-1, 2024 WL 756642, at *5–6 (D.D.C. Feb. 23, 2024) (denying Mr. Kelly's Motion for Release Pending Appeal because the Court would consider imposing consecutive misdemeanor sentences if his § 1512 conviction were vacated, due to his unusually "harmful and egregious" conduct); Order Denying Renewed Motion for Bail Pending Appeal 5, ECF No. 151 (reiterating that, even after *Fischer*, "[t]he Court [had] not changed its mind with respect to the strong possibility of imposing consecutive sentences in a hypothetical resentencing," with the caveat that "[t]his Order does not pre-commit the Court to imposing consecutive sentences for Mr. Kelly's misdemeanor charges in the event that he is resentenced"). Moreover, as the Government aptly points out, this Court's initial decision to order concurrent sentences for Mr. Kelly's misdemeanor convictions was influenced by the Sentencing Guidelines' instruction that sentences should run concurrently when "the sentence imposed on the count carrying the highest statutory maximum"—in this case the § 1512 charge—"is adequate to achieve the total punishment" prescribed by the Guidelines. U.S.S.G. § 5G1.2(c). With Mr. Kelly's § 1512 conviction now off the table but the Court's view of his conduct largely unchanged,

6

the D.C. Circuit had every reason to infer that the Court may wish to revisit its treatment of Mr. Kelly's misdemeanor charges now.

If the Court of Appeals meant to limit the Court's authority to resentence Mr. Kelly on his remaining counts, it would have done so expressly. The capacious language of the D.C. Circuit's Order is best interpreted to give this Court an additional opportunity to mull over issues that it had previously left open before deciding in its discretion whether a resentencing is necessary, not to preclude such a hearing *sub silentio*. *Accord United States v. Townsend*, 178 F.3d 558, 567 (D.C. Cir. 1999) ("[W]hen a defendant is found guilty on a multicount indictment . . . and . . . some counts are vacated, the judge should be free to review the efficacy of what remains in light of the original plan.") (internal quotations omitted).

## II. THE COURT IS PERMITTED TO RESENTENCE MR. KELLY TO AN ABOVE-GUIDELINES SENTENCE ON HIS MISDEMEANOR COUNTS

Next, Mr. Kelly argues that it would be error to sentence him to additional prison time on his non-vacated misdemeanor convictions. Mr. Kelly's argues that the Guidelines range for his remaining offenses would be at most six to twelve months and that, given how much of his sentence he has already served, the only way to impose additional prison time would be to prescribe a new sentence on those counts in excess of the Guidelines range. Def.'s Sent'g Mem. 7. There is substantially no dispute as to that point,[2] and indeed the Government explicitly requests

---

[2] Mr. Kelly briefly argues that his § 1752(a)(2) conviction should be evaluated under U.S.S.G. § 2B2.3, which would yield a shorter recommended sentence than the Government's proposed Guidelines provision, U.S.S.G. § 2A2.4. Def.'s Sent'g Mem. 6–7; Gov.'s Sent'g Mem. 4. However, D.C. Circuit precedent confirms that § 2A2.4 is the proper basis for computing Mr. Kelly's sentence. In *United States v. Nassif*, the D.C. Circuit held that the defendant, convicted of violations of § 1752(a)(2), was properly sentenced pursuant to § 2A2.4. *United States v. Nassif*, 97 F.4th 968, 982–83 (D.C. Cir. 2024). The Court of Appeals reasoned that § 2A2.4 was "a more natural fit" for the defendant's conduct than § 2B2.3 because the defendant's § 1752(a)(2) charge alleged that the defendant "'did in fact impede and disrupt the orderly conduct of Government business' in a 'restricted building.'" *Id.* at 983. Mr. Kelly's § 1752(a)(2) charge contains identical language, and should therefore be treated in the same manner. *See* Count 3, Indictment at 2, ECF No. 27. Mr. Kelly also argues that his offense level should be reduced by two points pursuant to U.S.S.G. § 4C1.1's modification for "Zero-Point Offenders." Def.'s Sent'g Mem. 7. The Government's reply brief does not address this contention. However, as it is within the Court's discretion to depart or vary from the Guidelines

7

an upward variance or departure from the Guidelines. Gov.'s Sent'g Mem. 5–15 (noting the six to twelve month range and advocating for an upward variance or departure). But Mr. Kelly further insists that this Court cannot grant a departure or variance. Specifically, he argues that to do so would be to treat him more severely than similarly situated defendants, with no basis in any of the Sentencing Guidelines' enumerated grounds for departure. Def.'s Sent'g Mem. 7–10. He also argues that to do so would, in effect, constitute punishment for exercising his right to appeal, in violation of his due process rights. *Id.* at 10–12. These arguments are unavailing.

A. *The Court Has Adequate Grounds to Depart or Vary Upward at Resentencing*

First, Mr. Kelly cites *United States v. Brown* for the proposition that "a judge imposing an above-Guidelines sentence must offer . . . a 'specific reason' why the defendant's case calls for a more severe sentence than other cases falling within the same Guidelines categories." *United States v. Brown*, 857 F.3d 403, 405 (D.C. Cir. 2017). Mr. Kelly notes that, to date, no court in this District has sentenced a misdemeanant who participated in the Capitol Riots to consecutive misdemeanor sentences which cumulatively constitute an above-Guidelines sentence. Whether or not this is true, however, this Court has already expressed its view that Mr. Kelly's conduct on the day of his offense was exceptionally grave in ways atypical of the many § 1752 misdemeanants who have been recently sentenced in this District:

> "Mr. Kelly's conduct was more harmful and egregious than the typical case represented by the guidelines range generated for defendants with only class A and class B misdemeanors stemming from the Capitol Riot. Mr. Kelly physically confronted a police officer and led rioters past a line of officers. Once in the Senate Chamber, Mr. Kelly rustled through certification paperwork, including paperwork belonging to the Vice President, and took photographs and videos of sensitive certification-related materials. Mr. Kelly photographed a threatening note left for Vice President Pence by Jacob Chansley and filmed himself making an impromptu speech at the Senate dais which communicated his intent to obstruct Congress from

---

anyway, the Court perceives no need to address this argument in advance of resentencing, where it will have the benefit of both parties' argument on this point.

certifying the 2020 presidential election.  Moreover, Mr. Kelly demonstrated at sentencing that he still does not appreciate the seriousness of his conduct."

*Kelly*, 2024 WL 756642, at *6 (internal citations omitted).  Thus, the Court has already articulated adequate case-specific reasons to impose an above-Guidelines sentence, as *Brown* requires.  Moreover, although the Court takes very seriously the Guidelines' directive that sentences should generally run concurrently except where necessary to effectuate a Guidelines sentence, *see* U.S.S.G. § 5G1.2, the Guidelines are advisory.  *See United States v. Booker*, 543 U.S. 220, 245 (2005).  It is well within the Court's discretion to effectuate an above-Guidelines sentence through the use of consecutive terms where justice—and the 18 U.S.C. § 3553(a) factors—so require.  *United States v. Turner*, 21 F.4th 862, 868 (D.C. Cir. 2022) ("[A] court may deviate from the Guidelines, including by imposing consecutive sentences that exceed the total recommended punishment, after considering the Guidelines range and the other statutory sentencing factors."); *see also Lora v. United States*, 599 U.S. 453, 455 (2023) ("When a federal court imposes multiple prison sentences, it can typically choose whether to run the sentences concurrently or consecutively.").

> B. *Imposing Consecutive Misdemeanor Sentences Would Not Constitute Unlawfully Disparate Treatment Compared to Other Capitol Riot Defendants*

Mr. Kelly protests that no court has ever given a Capitol Riot defendant an above-Guidelines term of incarceration entirely comprising consecutive misdemeanor sentences.  But even assuming that this exact situation has not arisen before, if this Court were to impose such a sentence to reconstitute Mr. Kelly's original thirty-month term, it would nevertheless not represent a significant deviation from other cases in this District.  For comparison, consider the following three cases.

First, in *United States v. Black*, the defendant violated 18 U.S.C. § 1752(a)(1) and (b)(1)(A) by entering the Capitol with a dangerous weapon, which carried a Guidelines range of twelve to eighteen months—just six months longer than Mr. Kelly's sentence on his § 1752 counts. *See* Sent'g Tr. 27, *United States v. Black*, No. 21-cr-127-ABJ-1 (D.D.C. Aug. 30, 2023), ECF No. 98; Judgment 1–2, *United States v. Black*, No. 21-cr-127-ABJ-1 (D.D.C. May 19, 2023), ECF No. 96. The court rendered a sentence of twenty-two months, comprising an above-Guideline twenty-month term for the defendant's § 1752 count *and* an additional two-month consecutive term for a misdemeanor offense: 40 U.S.C. § 5104(e)(2)(A), of which Mr. Kelly was also convicted. *Black* Sent'g Tr. At 80. In other words, the *Black* court both imposed an above-Guideline sentence *and* ordered a consecutive misdemeanor sentence to account for the distinctive severity of the defendant's conduct, notably including entering the Senate Chamber and staying on the Senate floor. *Id.* Second, in *United States v. Robertson*, the court applied a twenty six-month upward departure on resentencing, pursuant in part to U.S.S.G. § 5K2.7's provision for "Disruption of Government Function." *See* Resent'g Tr. 60–64, *United States v. Robertson*, No. 21-cr-34-CRC-1 (D.D.C. Sept. 13, 2024), ECF No. 176. That basis for departure is equally applicable in Mr. Kelly's case.[3] Finally, in *United States v. Nordean*, the court rendered a sentence consisting of a two-year term served consecutively after a twenty-year term. *See* Minute Entry, *United States v. Nordean*, No. 21-cr-175-TJK-5 (Sept. 5, 2023). In order to replicate Mr. Kelly's original thirty-month sentence, the Court would need to impose consecutive misdemeanor sentences totaling

---

[3] Mr. Kelly has argued that the "Disruption of Government Function" departure is unavailable in his case because the Government has not shown that Mr. Kelly's conduct proximately or predominantly caused the disruption of Congress's joint session on January 6, 2021. Based on *Robertson* and other Capitol Riots cases applying U.S.S.G. § 5K2.7, the Court rejects this argument. *See also* Sent'g Tr. 46, *United States v. Oliveras*, 21-cr-738-BAH-1 (D.D.C. Oct. 15, 2024), ECF No. 134 (applying this rationale for departure upon resentencing after vacatur of a § 1512 conviction). Mr. Kelly argues that "apparently no judge in this Court has applied [the § 5K2.7] departure to a § 1752 conviction . . . ." This is plainly not true. *See Black* Sent'g Tr. 27. And even if it were true, the mere fact that no Court has done so yet would not prove that this Court may not do so now. Mr. Kelly cites no binding authority in favor of his narrow, proximate-cause-based reading of § 5K2.7.

eighteen months on top of his existing twelve-month sentence for his § 1752 conviction—shorter than the two-year consecutive sentence imposed in *Nordean*.

Taken together, these cases demonstrate that neither the imposition of an above-Guideline sentence upon resentencing, nor the use of consecutive misdemeanor sentences to do so, nor the degree of deviation from the Guidelines or length of consecutive sentences necessary to reconstitute Mr. Kelly's original sentence length, would be exceptional or unprecedented. Even if the combination of these various sentencing strategies would be unusual, that is equally attributable to the simple fact that *Fischer* was decided relatively recently, so there have not yet been a tremendous number of resentencings resembling Mr. Kelly's. Either way, the Court would not be treating Mr. Kelly differently from similarly situated defendants if it chose to reinstitute a thirty-month sentence.[4]

### C. Resentencing Mr. Kelly to an Equally Severe Sentence Would Not Violate Due Process

Mr. Kelly's final argument is that resentencing him to a term of incarceration approximating his original sentence would be unlawful because lengthening his sentence for his non-vacated convictions would constitute retaliation for exercising his right to appeal, and deprive

---

[4] Mr. Kelly further argues that the original sentence range of 24-30 months was incorrectly calculated because it included a 3-point enhancement for "substantial interference with the administration of justice" pursuant to U.S.S.G. § 2J1.2(b)(2). In a D.C. Circuit opinion delivered after Mr. Kelly's sentencing, the D.C. Circuit concluded that "the 'administration of justice' enhancement does not apply to interference with the legislative process of certifying electoral votes." *United States v. Brock*, 94 F.4th 39, 42 (D.C. Cir. 2024). The Government does not dispute Mr. Kelly's interpretation of *Brock* or its applicability to this case, but urges that it has no bearing on the Court's discretion to depart or vary upward from the Guidelines. The Court need not resolve this disagreement today. Even if Mr. Kelly were correct that the § 2J1.2(b)(2) enhancement should not have been applied to his original sentence, his offense score would have been 14, which corresponds to a sentence of fifteen to twenty-one months. Although less than the thirty-month sentence he received for his § 1512 conviction, this is still greater than the twelve-month sentence which he received for his § 1752 counts. At most, then, Mr. Kelly's argument counsels in favor of imposing a sentence between fifteen and twenty-one months rather than thirty if the Court ultimately decides to depart or vary upward upon resentencing. But it does *not* bear on whether the Court should proceed with resentencing in the first place, and it certainly does not support the more extreme proposition that imposing an above-Guideline sentence at resentencing would constitute reversible error.

the Court of Appeals' and Supreme Court's decision of any meaning. This argument fails for multiple reasons.

As an initial matter, it is long-settled that a court may review an entire sentence on remand where "the interdependence of the different segments of the sentence" is such that "removal of the sentence on one count draws into question the correctness of the initial aggregate minus the severed element." *United States v. Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006). Here, the necessary interdependence is satisfied: the Court set Mr. Kelly's sentence for his misdemeanor counts to run concurrently to his sentence on his § 1512 charge *because* the latter sufficed to deliver a sentence that, in both the Court's view and under the Sentencing Guidelines, appropriately reflected Mr. Kelly's conduct. Given the significant change wrought by the vacatur of Mr. Kelly's § 1512 conviction, the Court must be "free to review the efficacy of what remains in light of the original plan." *Townsend*, 178 F.3d at 567.

Mr. Kelly urges that to do so would constitute retaliation for exercising—and, effectively, nullification of—his right to appeal, relying on *North Carolina v. Pearce*, 395 U.S. 711 (1969). That case considered whether the Due Process Clause of the Fourteenth Amendment prohibits a judge from imposing a harsher sentence after a defendant successfully attacks his conviction on appeal and is then re-convicted. The Supreme Court held that due process allows for harsher punishment upon resentencing, but that the Court's "reasons for . . . doing so must affirmatively appear" and must be "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.* at 726. The Court reasoned that requiring the revised sentence to be based on newly arising information and memorialized in the record would prevent the Court from basing its new sentence on

12

"vindictiveness against a defendant for having successfully attacked his first conviction," which is assuredly a violation of due process. *Id.* at 725.

*Pearce* is inapposite to the case at hand because, by its own terms, the case only concerns "what constitutional limitations there may be upon the imposition of a *more severe* sentence after reconviction." *Id.* at 717 (emphasis added). Even assuming that the principle articulated in *Pearce* applies to resentencings arising from circumstances other than re-convictions after re-trial, numerous federal courts have held that *Pearce* does not apply in cases where the resentencing court imposes an "equal or lesser aggregate term." *Craycraft v. Cook*, 634 Fed. App'x 490, 493 (6th Cir. 2015) (Cole, C.J.) (citing *United States v. Rodgers*, 278 F.3d 599, 604 (6th Cir. 2002)); *see United States v. Tolson*, 935 F. Supp. 17, 21 (D.D.C. 1996) ("A resentence that does not exceed the initial sentence cannot violate the Constitution. While [the defendant] may have a legitimate expectation in the finality of his sentence, he does not have a legitimate expectation of finality in the discrete components of a sentence which is comprised of interdependent counts.").[5] The Court is not contemplating a revised sentence that exceeds Mr. Kelly's original 30-month sentence, so the *Pearce* rule is inapplicable here. Moreover, a defendant invoking the *Pearce* rule must either point to "circumstances . . . in which there is a reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority," or else "the burden remains on the defendant to prove actual vindictiveness . . . ." *Alabama v. Smith*, 490 U.S. 794, 799 (1989) (citations and quotations omitted). Here, there are no indications whatsoever of

---

[5] *See also United States v. Schoenhoff*, 919 F.2d 936, 939 (5th Cir. 199) ("[W]hen . . . the effect of an appellant's challenge implicates the sentencing scheme with respect to interrelated or intertwining counts, the presumption of vindictiveness does not arise if the overall sentence is not increased.") (quotation omitted); *United States v. Fortier*, 242 F.3d 1224, 1229 (10th Cir. 2001) ("[T]he *Pearce* presumption [of vindictiveness] is inapplicable when a defendant receives the same sentence on remand."); *United States v. Smotherman*, 326 F.3d 988, 989 (8th Cir. 2003) ("A resentencing does not trigger the rule in *Pearce* unless the second sentence is 'more severe.'"); *Kelly v. Neubert*, 898 F.2d 15, 16 (3d Cir. 1990) (same).

13

vindictiveness: as discussed above, the Court has made clear in multiple orders *preceding* the vacatur of Mr. Kelly's § 1512 conviction that the Court views his conduct as especially blameworthy and deserving of a significant term of incarceration. The Court can hardly be accused of vindictiveness for hewing to the exact same perspective that it had articulated prior to the instant remand.[6]

### III. CONCLUSION

This Opinion should not be taken to portend that the Court will ultimately resentence Mr. Kelly to a sentence exceeding the twelve months that he originally received for his misdemeanor charges. That decision will hinge on a multitude of factors including, among others, the application of the § 3553(a) factors to Mr. Kelly's offense, Mr. Kelly's conduct since his original sentence, the arguments raised in the parties' briefs, and the parties' allocution at the resentencing hearing. A separate Order will issue setting a date and time for Mr. Kelly's resentencing.

Date: November 25, 2024

Royce C. Lamberth
United States District Judge

---

[6] Perhaps Mr. Kelly is of the belief that the "aggregate sentence" in this case, for purposes of deciding whether the *Pearce* rule applies, consists only of his non-vacated sentences stemming from his misdemeanor counts. If that interpretation were correct, then converting Mr. Kelly's concurrent misdemeanor sentences to consecutive ones would constitute an increase in the aggregate sentence, thus triggering the *Pearce* rule. This interpretation, however, must be rejected because it would invalidate the Sentencing Package Doctrine. That doctrine, as discussed above and as articulated in *Townsend*, permits a resentencing court to augment non-vacated sentences as necessary to craft an appropriate punishment following vacatur of another sentence, provided that the non-vacated counts are sufficiently intertwined with the vacated one. *Townsend*, 178 F.3d at 558; *see also Smith*, 467 F.3d at 789. If Mr. Kelly's expansive interpretation of *Pearce* were correct, *Pearce*'s presumption of vindictiveness would apply in virtually every application of the Sentencing Package Doctrine. The Court will not adopt an interpretation of *Pearce* that would suggest this doctrine, which the D.C. Circuit has endorsed on countless occasions, is violative of the Fourteenth Amendment's Due Process Clause.